**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
BARRY BERMAN,

                        Plaintiff,

           - v -                         Civ. No. 9:13-CV-136
                                                 (LEK/RFT)

CHARLES DURKIN, *et al.*,

                        Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## DISCOVERY DECISION and ORDER

On or about December 9, 2013, *pro se* Plaintiff Berman filed several Motions seeking, *inter alia*, to amend/correct his Amended Complaint, a preliminary injunction/TRO, to compel discovery, and an appointment of counsel. *See* Dkt. Nos. 49, 50, 51, 52, 53, 54, & 55.[1] Defendants filed an Omnibus Memorandum of Law in opposition to Berman's Motions to Amend, for Preliminary Injunction, and to Compel. Dkt. No. 56. Shortly after Defendants filed their Opposition to Berman's Motions, Berman filed a Motion withdrawing his Motions for a Preliminary Injunction and to amend his Amended Complaint, while noting that he will continue to prosecute his Motion to Compel. Dkt. No. 59, Pl.'s Lt., dated Jan. 3, 2014. The Court granted this relief. Dkt. No. 60, Text Order, dated Jan. 6, 2014.

Notwithstanding that his Motion to Compel was pending, Berman filed yet

---

[1] Berman's Motion for Appointment of Counsel was denied without prejudice. Dkt. No. 66, Decision and Order, dated Feb. 6, 2014.

another document, which the Court has construed to be an additional Motion to Compel that materially subsumes the originally filed Motion to Compel, as well as requests permission for non-stenographic depositions of certain Defendants. Dkt. No. 65, Pl.'s Second Mot. to Compel, dated Jan. 27, 2014.[2] Considering that Berman's latest filing is deemed a Motion to Compel, Defendants responded thereto with a Letter-Brief. Dkt. No. 72, Defs.' Lt.-Br., dated Mar. 6, 2014. A week later, Berman filed a Reply to Defendants' Opposition. Dkt. No. 73, Pl.'s Reply Lt.-Br., dated Mar. 11, 2014. Because Berman's January 27, 2014 Motion to Compel is easier to follow with regard to what he seeks to compel, the Court will seamlessly conform to his format when ruling.

## I. AMENDED COMPLAINT AND DISCOVERY DEMANDS

In order to aptly determine the scope of discovery, the reasonableness of Berman's Demands, and the adequacy of Defendants' Responses, the Court must consider the nature of Berman's Amended Complaint. Dkt. No. 15, Am. Compl. Berman's Amended Complaint covers a series of events and an array of causes of action. Berman alleges, *inter alia*, that Defendants subjected him to excessive force on more than one occasion, failed to protect him from this excessive force, retaliated

---

[2] Berman entitled this submission as Objection to Defendants' Responses to his Demands for Discovery. Berman's objections actually appear to be additional arguments in support of his previous Motion to Compel. Considering the nature of this submission, said document is best designated as a Motion to Compel.

against him for filing grievances, and were deliberately indifferent to his serious medical needs, all in violation of his constitutional rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. *See generally id*. Berman alleges that all of these constitutional violations also violated Title II of the Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act. *Id*.

In a rather prolix Amended Complaint, Berman accuses Defendants Durkin, Mitchell, Devereux, and others of assaulting him on May 27 and June 13, 2010. Additionally Defendant Devereaux is alleged to have failed to intervene and stop the beating that occurred on May 27, 2013. *Id*. at ¶ 66. Berman complains that he was denied food from May 27 to June 1. He also alleges that Defendants Durkin and Mitchell violated his First Amendment rights when, in retaliation for filing grievances, they beat him on June 13, 2010. *Id*. at ¶ 67. Berman complains that Defendants LaValley and Lozier failed to protect him and improperly managed or supervise their subordinates, thereby creating the unconstitutional conditions and events. *Id*. at ¶ 59. Berman asserts that Defendants Longerman, Inspector General for the Department of Corrections and Community Supervision (DOCCS), was deliberately indifferent when Longerman negligently conducted an inspection of both the May 27 and June 13 events. *Id*. at ¶ 61. And, because he suffers from a mental illness, all of the alleged conduct violated the ADA and the Rehabilitation Act. Lastly, Berman alleges at

considerable length that Defendant Doctors Ramineni, Mannava, and Koeningsmann violated his Eighth Amendment Rights by being medically indifferent to his multiple, chronic and serious medical needs that extended over a elongated period of time. *Id*. at ¶¶ 70-104.

Berman advises that he served First and Second Discovery Requests to which Defendants have either failed or inadequately responded to. *See* Dkt. No. 52-1 & 65. Conversely, Defendants aver that they sent 584 pages of records to the Mid-State Correctional Facility (Mid-State) Office of Inmate Records Coordinator (IRC) so that Berman could review the records and determine which documents he would like to retain. Dkt. No. 56-2, Kristen M. Quaresimo, Esq., Decl., dated Dec. 27, 2013, at ¶¶ 4-5. Apparently, Berman has reviewed these documents. *Id*. at ¶ 7. Notwithstanding the disclosure of hundreds of documents, Defendants had not formally responded to Berman's Demands, even though they found many of the discovery demands objectionable for various reasons. *Id*. at ¶¶ 8 & 10. Instead, Defendants' Counsel avers that she relied upon providing Berman with all of the materials within her possession that were required by the mandatory disclosure order. *Id*. at ¶ 11.[3] Subsequently, Defendants served their Responses to Berman's First and Second

---

[3] In the interim, Berman served Defendants with a Third Request for Discovery which he acknowledges relates in material respect to his First Demand for Discovery. Dkt. No. 57, Pl.'s Lt., dated Dec. 25, 2013.

Demands for Discovery, raising various legal objections. Dkt. Nos. 64, Defs.' Lt., dated Jan. 13, 2014; 72-1, Kristen M. Quaresimo Decl., dated Mar. 6, 2014, at ¶ 8. Apparently the service of Defendants' Responses prompted Berman to file Objections, which, as noted above, this Court has construed as another Motion to Compel. *See* Dkt. No. 65. And, in turn, Defendants timely responded to Berman's Objections. Dkt. No. 72.

## II. RULINGS

As stated above, the Court is following the sequence of issues set in Berman's Second Motion to Compel, and rules as follows:

### A. Berman's First Demand for Discovery

1. Berman seeks any and all grievances and complaints filed against Defendants Mitchell, Durkin, and Devereaux. Defendants object on the grounds that the request is not reasonably calculated to lead to admissible evidence and also seeks confidential information.

First, other inmate's records, reports, grievances, and complaints are deemed confidential, especially as to disclosure to other inmates. Second, records regarding correctional officers are entitled to confidentiality protection. However, such complaints, grievances, and the like may have relevant information. Such documents are usually found within the correctional officers' files. Accordingly, the Court

directs Defendants to provide this Court with the personnel files of Mitchell, Durkin, and Devereaux so that an *in camera* review may be conducted to determine the presence of relevant information.

2 & 3. Berman seeks grievances and complaints filed with the Inspector General about the Defendants and any complaints filed with DOCCS regarding mistreatment of inmates in the APPU. Defendant claims that these grievances and complaints are confidential for security reasons.

Again, Defendant's objection would hold true because such records would not be shared with another inmate for security reasons. But, Berman alleges that Defendants LaValley and Lozier allowed, permitted, condoned, and failed to correct constitutional violations that occurred at their facility to which Berman was similarly a victim. These allegations may state a violation under 42 U.S.C. § 1983 and conceivably could establish the personal involvement of these Defendants. If Berman had an attorney, such records would, in all likelihood, be produced. Without access to these records, if they exist, Berman would not be able to demonstrate that LaValley and Lozier allowed such constitutional violations to be perpetuated at this correctional facility. The Court grants Berman an opportunity to inspect those grievances and complaints that deal with excessive force for the two-year period of 2009 and 2010. Defendants shall redact the identities of inmates, inmate numbers, and names of

correction officers.

4. Defendants aver that use of force and/or unusual incident reports for the May 27 and June 13 incidents do not exist. *See* Dkt. No. 72-2, Tammy Irwin Decl., dated Mar. 4, 2014, at ¶ 3. Accordingly, Defendants' Response stands.

5. Defendants advise that they provided Berman with an unredacted APPU Log book entry for May 27, 2010. Berman should be able to use this list to identify any John Does Defendants. Policies, directives and/or instructions that are shared with the staff are irrelevant. Accordingly, Defendants' Response stands.

7. With the Log Book, Berman should be able to identify any John Doe Defendants. Yet, Defendants advise that they provided Berman with the names of the sergeants assigned to APPU on or about the time of the May 27, 2010 incident. Said Response is adequate. Defendants do not have to provide the name of Devereaux's supervising sergeant.

8. A correction officer's medical records are protected health information and entitled to confidentiality. To the extent that such injuries may be or could be introduced at trial, Berman is entitled to such information. To meet this disclosure, Defendant Devereaux can describe any injury that he may have sustained during the May 27, 2010 incident.

9. The request for all of the names of sergeants at CCF on May 27, 2010, is denied

as not being relevant and, moreover, Defendants have already provided the names of sergeants supervising the APPU, which possibly may be relevant.

10. Defendants aver that there are no photographs. *See* Dkt. Nos. 72-2, Irwin Decl., at ¶¶ 4-7, 72-4, John Reyell Decl., dated Mar. 5, 2014, at ¶¶ 2-3. Accordingly, Defendants' Response stands.

11. Unless Defendants actually possess records generated by the New York State Police Criminal Investigation Bureau, they do not have to secure them from the State Police, a third-party, and produce them to Berman.

13. Letters or reports stating that Berman threatened or extorted inmates in APPU are not relevant to his civil rights action. However, if Defendants intend to use these letters to impeach Berman, then those letters and reports shall be produced with the names of any inmate informant(s) redacted. If Defendants do not intend to use these letters to impeach, they shall so advise Berman.

14. In order to establish that he is disabled due to mental health, Berman may need his mental health records from May 27 to July 18, 2010. However, some mental health assessments are deemed confidential for security reasons. Accordingly, Defendants shall provide these records redacting professional assessments.

17. Excerpts from DOCCS' Health Service Policy Manual sufficiently respond to this Demand. However, to the extent pages are missing from the Library's copy of the

Manual, Defendants or Mid-State should make an effort to replace those pages.

18, 19, & 20. Defendants state that they are unaware of the existence of any documents responsive to Berman's Demands, and, moreover, are unsure as to what Berman seeks. But from what the Court can glean from the Demands, they seem to seek information not calculated to lead to admissible evidence relative to Berman's treatment being constitutionally deficient. Accordingly, these Demands are denied.

21 & 22. Much like correction officers, other prison staff members' personnel files are confidential and, in any event, not disclosed to inmates because of security reasons. However, the Court directs Defendants to provide the Court with Drs. Ramineni's and Mannava's personnel files for an *in camera* review in order to determine if there is any information relevant for this case.

23. Policies related to drawing blood through feed-up hatches are not relevant.

24. List of medical facilities, equipment, and supplies are not relevant.

25. Without being more specific, Berman's Demands for policies and directives regarding medical examinations of inmates is overbroad and not relevant.

### B. Berman's Second Demand for Discovery

1. For security reasons, Berman is not entitled to personal information of former and current inmates.

2. The Court agrees with Defendants that other correction officers' conduct cannot

be imputed to the Defendants, but if there is a systematic violation of constitutional rights at CCF, as alleged, and certain letters reflect that premise, Berman is entitled to Prisoner Legal Services' Letters from 2009 and 2010, if they exist and are in Defendants' possession. Inmates' and correction officers' identifying information must be redacted.

### C. Non-Stenographic Depositions of Defendants[4]

Berman makes a request for non-stenographic depositions of Defendants Lozier, Ramineni and Mannava, who work at a Mid-State. Dkt. No. 65. In seeking depositions of these Defendants, Berman raises other related demands: (1) that he be allowed to audio tape such depositions; (2) that the Court order the arrangements and particulars of these depositions; and (3) that two tape recorders be used.[5]

Depositions taken by an inmate pose fundamental security concerns and raise cost issues. Ostensibly Berman wants to eschew typical stenographic costs associated with taking parties' depositions. The Court appreciates that such costs can be monumental, especially when imposed upon a *pro se* party with limited financial resources. However, Berman erroneously presumes that the Court can, by itself,

---

[4] Apparently, Defendants did not oppose this Request.

[5] It appears that the last sentence of Berman's Request is either cut-off, incomplete, or may have been a second page. Dkt. No. 65. However, because a second page was not presented, the Court will only respond to the one-paged document presented.

readily dispense with those costs or impose the costs upon Defendants because of his indigency. The matter of selecting a recording medium to preserve deposition testimony is not entirely within the control of the Court. Rather, the permitted methods of discovery *via* deposition, which may ultimately have significant bearing on the management of discovery costs, are controlled by Federal Rules of Civil Procedure 30 and 31. These two Rules provide alternative methods to stenographic testimony that can conceivably render the cost of conducting a deposition more manageable, but they do not free him of his cost obligations.

There is no requirement that a deposition must be taken only by stenographic means. Rule 30(b)(3)(a) states in relevant part that deposition "testimony may be recorded by audio, audiovisual, or stenographic means. The noticing party bears the recording costs. Any party may arrange to transcribe a deposition."[6] FED. R. CIV. P. 30(b)(3)(A). Further, a party "may designate another method of recording the testimony in addition to that specified in the original notice." FED. R. CIV. P. 30(b)(3)(B). These provisions provide reasonable flexibility and confirm that a non-stenographic recording is acceptable. As long as there is sufficient advance notice of the deposition and the method of recording to be employed, the interrogator singularly

---

[6] Although a transcript may not be needed for discovery purposes, such a transcript will be necessary for a motion for summary judgment or at trial. FED. R. CIV. P. 32.

possesses autonomy over the mode of recording, unless the deponent objects, at which time the court may intervene and designate the method of recording. In addition to serving a completely informed notice for the deposition and, unless the parties stipulate, an officer designated by Federal Rule 28 must administer an oath or affirmation to the deponent. FED. R. CIV. P. 30(b)(1) & (5).

The Federal Rules of Civil Procedure also permit a party to depose any person by written questions. FED. R. CIV. P. 31(a)(1). Rule 31 sets forth the procedures to be followed if a deposition is conducted *via* written questions.

Taking a witness deposition by a tape recorder or written questions indubitably are cost saving measures authorized by the Federal Rules of Civil Procedure. However, the Court would be remiss if it did not note that there are other provisions to be considered. Even if Berman were to conduct depositions by tape recorder, such tape recording may be of little utility in the end. As a general proposition, a transcript should be available for any summary judgment motion or at trial:

> Unless the court orders otherwise, a party must provide a transcript of any deposition testimony the party offers, but may provide the court with the testimony in nontranscript form as well. On any party's request, deposition testimony offered in a jury trial for any purpose other than impeachment must be presented in nontranscript form, if available, unless the court for good cause orders otherwise.

FED. R. CIV. P. 32(c).

Granting a non-stenographic deposition at this juncture may not be a cost panacea for

the interrogating party. Most courts, whether addressing dispositive motions or conducting a trial, find using a tape-recorded deposition unwieldy and exasperating, and often avoid such recording unless there is a transcript. Berman should remain aware that a trial court may reject the use of the taped deposition and insist upon a transcript. In any event, whether a transcript is provided, Berman must bear the cost of these requested depositions.

As mentioned above, there are security issues. Although the Federal Rules do not impose any heightened requirements upon an inmate-party in order to obtain an oral deposition, the Court must take into consideration the special security needs that will consequently attach. To the extent that Berman insists upon tape-recorded, oral depositions of these Defendants, they will be subject to the following instructions:[7]

1. In accordance with FED. R. CIV. P. 30(b)(3)(A), Berman is granted leave to preserve the contents of the depositions by tape recording rather than by stenographic means and, in accordance with FED. R. CIV. P. 30(b)(3)(B), Defendants are granted leave to make their own audio or stenographic recordings of the deposition of any Defendant if they choose;

2. In accordance with FED. R. CIV. P. 30(b)(4), Berman is also granted leave

---

[7] Although the Court cannot mandate the following procedure, the Court highly recommends that Berman consider taking depositions by written questions. *See* FED. R. CIV. P. 31.

to take the oral depositions of these Defendants by telephone in order to minimize disruption of Defendants' work schedules. If the depositions are to be conducted over the phone, the places where each Defendant will be present and the times of the depositions must be coordinated between Berman and Defendants;

3. In accordance with FED. R. CIV. P. 28(a)(1)(B) and 30(b)(5)(A), counsel for Defendants is appointed the "officer" before whom all oral depositions of Defendants are to be taken;

4. Berman shall be responsible for all costs related to tape recording the depositions and for the production of any transcripts of those depositions which Berman desires to use in the litigation of this action. But, if Defendants wish to obtain transcripts of any deposition for which Berman has not provided a transcript, Defendants are granted leave to do so at their own expense in accordance with FED. R. CIV. P. 30(f)(1) and (3):

5. Unless Defendants tape record the depositions, Berman shall be responsible for tape recording the oral deposition of each Defendant. Berman must produce his own tape recorder for these depositions. Defendants are not obligated to provide Berman with a tape recorder;

6. If <u>only</u> Berman makes a tape recording of a deposition, Berman shall send

the <u>original</u> tape recording[8] to counsel for Defendants as the deposition officer so that it is maintained throughout the litigation of this action in accordance with FED. R. CIV. P. 30(f)(1). Upon request and prepayment of any cost associated therewith by Berman, counsel for Defendants shall provide Berman with a copy of the tape recording of any deposition or, if Defendants also make a tape recording of a deposition, the copy made by Defendants shall be maintained by counsel for Defendants as the deposition officer in accordance with FED. R. CIV. P. 30(f)(1);

7. In accordance with FED. R. CIV. P. 30(f)(2), any documents and tangible things produced for inspection or use during the deposition of a Defendant shall be marked for identification and attached to the original tape recording of the deposition by counsel for Defendants as the officer;[9]

8. If the deposition is conducted by telephone, DOCCS shall provide a room with a speaker-capable telephone for Berman to use at the facility where he is incarcerated at the time designated for the oral deposition and DOCCS may have present in the room whatever personnel are deemed necessary for institutional security;

---

[8] Each deposition of a Defendant shall be recorded on a separate tape.

[9] In accordance with FED. R. CIV. P. 30(b)(4), the documents and tangible things produced or used at the location where the deponent is present shall constitute those to be attached to the original tape recording.

9. DOCCS shall permit Berman to have present with him during any deposition a tape recording device and audiotapes, whether conducted in person or over the telephone;

10. DOCCS may permit Berman the right to retain custody of any audiotape recording made during the oral deposition under whatever conditions are deemed necessary by DOCCS for institutional security. DOCCS is <u>not</u> required to, but may, allow any tape recording device to be maintained by Berman either prior to his entrance into the room for any deposition or after any deposition has been completed. Possession of a tape recorder is left to the discretion of DOCCS personnel and based upon institutional security; and

11. If the parties find that they are unable to agree on any matter related to Berman's deposition of any Defendant, the parties shall contact the Chambers of the undersigned to request a further conference concerning the matters in dispute.

Before undertaking any deposition, Berman should make himself familiar with Rules 28 and 30-32.

### D. Amending the Scheduling Order

The Mandatory Pretrial Discovery and Scheduling Order requires that discovery be completed by March 5, 2014. Because the Court had to decide Berman's Motions, the discovery deadline has expired leaving disclosures and depositions outstanding.

In order to accommodate the Court's directives above, the Scheduling Order is amended as follows: (1) the discovery deadline is **July 15, 2014.** Other than depositions and the production of information as directed above, no further written demands will be permitted; and (2) the final day to file dispositive motions is **September 12, 2014.**

Based upon the foregoing, it is hereby

**ORDERED** that Berman's Motions to Compel, Dkt. Nos. 52 and 65, are **granted in part and denied in part**, consistent with the directions above; and it is further

**ORDERED** that the Scheduling Order is amended consistent with the directions above; and it is further

**ORDERED** that the Clerk of the Court mail a copy of the Discovery Decision and Order to Barry Berman at his last known address.

**IT IS SO ORDERED**.

April 24, 2014
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge