# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

BARRY BERMAN,

                    Plaintiff,

        - v -                                         Civ. No. 9:13-CV-136
                                                              (LEK/RFT)

CHARLES DURKIN, *Sergeant;* DONALD MITCHELL;
J. DEVEREAUX; JOHN DOES #1-3, *Correctional Officers*;
JOHN DOES #4-5, *Sergeants*; LONGERMAN, *Inspector General*;
THOMAS LAVALLEY, *Superintendent , Clinton Correctional
Facility*; C. LOZIER, *Deputy Superintendent of Administration,
Mid-State Correctional Facility*; DR. V MANNAVA;
DR. S. RAMINENI, *Mid-State Correctional Facility*;
DR. KOENINGSMANN, *Chief Medical Officer, NYSDOCCS,*

                    Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

BARRY BERMAN
*Pro se* Plaintiff
130 Plymouth Avenue South
Rochester, NY 14614

HON. ERIC SCHNEIDERMAN                        JOSHUA E. MCMAHON, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## <u>REPORT-RECOMMENDATION and ORDER</u>

On February 1, 2013,[1] *pro se* Plaintiff Barry Berman, while incarcerated at Mid-State Correctional Facility, filed a civil rights action pursuant to 42 U.S. C. § 1983; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*; and § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*, stemming from his confinement at both Clinton and Mid-State Correctional Facilities. Dkt. No. 15, Am. Compl.[2] In particular, Plaintiff claims that he was assaulted by Clinton correctional officers and sergeants in violation of the Eighth Amendment, retaliated against for protected speech in violation of the First Amendment, and excluded from prison programs and services due to his disability in violation of Title II of the ADA and the Rehabilitation Act. *See generally id.*; Dkt. No. 19, Mot. for Recons. [hereinafter "Supp. Aff."].[3]

On June 10, 2014, Defendants filed a partial Motion for Judgment on the Pleadings, pursuant to 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 86. On

---

[1] The Second Circuit has held that due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he or she hands the papers to the prison authorities for transmittal to the court. *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir. 1993), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994). It is presumed that a prisoner handed the pleading to the prison guard on the date he signed the complaint. *Shaw v. Superintendent Attica Corr. Fac.*, 2007 WL 951459, at *3 n.3 (N.D.N.Y. Mar. 28, 2007).

[2] The Amended Complaint was filed as of right pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

[3] On September 13, 2013, the Honorable Lawrence E. Kahn, Senior United States District Judge, issued a Decision and Order directing that Plaintiff's Motion for Reconsideration be considered a Supplemental Affidavit in support of Plaintiff's Amended Complaint; thus, effectively rendering it a part of the operative pleading. Dkt. No. 42.

July 1, 2014, Plaintiff filed his Response in opposition thereto. Dkt. No. 94. Defendants filed their Reply on August 11, 2014. Dkt. No. 101. In the interim, Plaintiff filed a Motion to Amend on June 23, 2014. Dkt. No. 92. On August 11, 2014, Defendants submitted a Response in opposition. Dkt. No. 100. Plaintiff submitted his Reply on September 10, 2014. Dkt. No. 104.

# I. DISCUSSION

Defendants urge this Court to dismiss Plaintiff's Eighth Amendment medical indifference claim as well as his ADA and Rehabilitation Act claims, and argue that Defendants Longerman, LaValley, Lozier, and Dr. Koeningsmann should be dismissed from this action due to a lack of personal involvement.[4] *See* Dkt. No. 86-1, Defs.' Mem. of Law. The Court will first discuss whether the operative pleading can survive the dispositive motion, and then will address Plaintiff's request to amend.

## A. Standard of Review

"The standard for granting a [FED. R. CIV. P.] 12(c) motion for judgment on the pleadings is identical to that of a [FED. R. CIV. P.] 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). On a motion to dismiss, the allegations of the complaint must be accepted as

---

[4] Defendants are not moving to dismiss Plaintiff's First Amendment retaliation claim nor his Eighth Amendment excessive force claim against Defendants Durkin, Mitchell, Devereux, and John Does #1-5. *See* Dkt. No. 86-1. Defs.' Mem. of Law at pp. i & 1; *see generally* Dkt. No. 1, Am. Compl.

true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

## B. Eighth Amendment

In accordance with the above standard, the following facts set forth in the Amended Complaint are taken as true. In July of 2010, Plaintiff was transferred to

Mid-State from Clinton. Am. Compl. at ¶ 70. During his time at Mid-State, Plaintiff suffered from abdominal pains, high cholesterol, breathing problems, "opacified maxillary sinuses," separated shoulder, "olecranon bone spur on his right elbow" and left elbow, a wart on his finger, "fungus affecting his hands, feet, and crotch area." *Id.* at ¶¶ 72, 78, & 81. Plaintiff also suffered from "excruciating headaches." *Id.* at ¶ 75. Drs. Ramineni, Health Director at Mid-State, and Mannava, a doctor at Mid-state, provided Plaintiff with primary care during the relevant time period. *Id.* at ¶¶ 12-13.

At some point before Plaintiff began experiencing severe headaches, he woke up "confused, had vision problems and suffered slowness of gait." *See id.* at ¶ 75. Plaintiff complained of twitching and numbness on his left side, for which Dr. Ramineni conducted an EMG exam. *Id.* at ¶ 75. Thereafter, Plaintiff continued to complain to Dr. Ramineni about the "severe pains in his head . . . for over four months" but Dr. Ramineni did "nothing to address the severe pains in his head" because Dr. Ramineni concluded that Plaintiff's complaints were "imaginary." *Id.* at ¶¶ 75-76.

Plaintiff was subsequently reassigned to Dr. Mannava for medical care and Defendant Lozier[5] sat in on Plaintiff's first meeting with Dr. Mannava. *Id.* at ¶ 77.

---

[5] Defendant Lozier is the Deputy Superintendent of Administrative Services at Mid-State Correctional Facility, and is "responsible for overseeing and supervisi[ng] the medical care and services at Mid-State Correctional Facility." Am. Compl. at ¶ 14.

"Plaintiff signed a HIPPA release form for DSA Lozier." *Id.* During that meeting, Dr. Mannava stated that Plaintiff "was afflicted with a fungus," but when Plaintiff informed him that the New York State Department of Corrections and Community Supervision ("DOCCS") had a provision that required the facility doctors to provide treatment for fungus Dr. Mannava "changed his diagnosis to one that didn't require treatment." *Id.* at ¶ 78. Dr. Mannava stated that he would prescribe "fungus pills, which he did not do." *Id.* Plaintiff was sent to a dermatologist who confirmed that he had a fungus infection and recommended "the needed pills." *Id.* at ¶ 98. However, the dermatologist's prescription was not approved. *Id.* Plaintiff claims he has not received any treatment for his fungus infection which "has removed his toe nails, [he] pick[s] pieces of toe nails out bit by bit, while bleeding and painful, and has affected his entire right hand . . . consum[ed] a fingernail . . . and it has reached the point where it has spread to consume his entire right hand[.]" *Id.* The fungus has peeled the "skin off his hand." *Id.*

In response to Plaintiff's complaint of "severe and excruciating headaches," Dr. Mannava stated that he first wanted to wait on the EMG test results. *Id.* at ¶ 79. Despite Plaintiff's daily complaints concerning head pains "and throbbing in his left ear," Drs. Mannava and Ramineni concluded that "plaintiff's headaches are not real" and, ultimately did not provide Plaintiff with any treatment for his headaches. *Id.* at

¶¶ 80 & 82. As a result, "he is subjected to waves of pain and twinges to pain all day and night in his head and is left holding his head in his hands for most of each day[.]" *Id.* at ¶ 104.

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd,* 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834–35 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of

comment or treatment; the presence of a medical condition that significantly affects an individuals' daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992)).  The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03 (1991); *Hathaway I,* 37 F.3d at 66.  A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. at 836.  This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*).  Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II"),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### 1. Serious Medical Need

Here, Plaintiff alleges that he has foot fungus, which spread to his entire right hand. Am. Compl. at ¶ 98. Generally, foot fungus is not a "serious" medical condition. *Thompson v. Carlsen*, 2010 WL 3584409, at *6 (N.D.N.Y. Aug. 16, 2010) (citing, *inter alia*, *Scott v. Laux*, 2008 WL 4371778, at *5 (N.D.N.Y. Sept. 18, 2008), for the proposition that fungal infections do not warrant Eighth Amendment protection). However, the Court is reluctant at this juncture to find that a fungus that appears to be spreading and causing the Plaintiff to bleed is not a serious medical condition. *Fox v. Brown*, 2007 WL 586724, at *8 (refusing to dismiss plaintiff's Eighth Amendment claim on a motion to dismiss "because it was impossible to say one way or another whether plaintiff's medical need was serious") (cited in *Thompson v. Carlsen*, 2010 WL 3584409, at *6).

Likewise, at this stage, Plaintiff's allegation that he suffered from "severe and excruciating headaches" constitutes a serious medical condition. *Benjamin v. Kooi*, 2010 WL 985844, at *7 (N.D.N.Y. Feb. 25, 2010) (citing, *inter alia*, *Peterson v. Miller*, 2007 WL 2071743, at *7 (N.D.N.Y. July 13, 2007)); *Peterson v. Miller*, 2007 WL 2071743, at *7) (noting that headaches depending on their severity, duration, and degree may constitute a serious medical need). Accordingly, the Court finds that Plaintiff has sufficiently alleged a serious medical condition.

## 2. *Deliberate Indifference*

Based upon the facts set forth in the Amended Complaint, the Court finds that Plaintiff has sufficiently demonstrated that Drs. Mannava and Ramineni acted with deliberate indifference towards his medical condition as they knew of his multitude of complaints regarding his headaches and fungal condition, and failed to provide him with any treatment or care.

## C. Personal Involvement

With respect to Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Lozier, Koeningsmann, LaValley, and Longerman, Defendants urge the Court to dismiss these Defendants for a lack of personal involvement. Defs.' Mem. of Law at p. 5. The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556

U.S. at 676.

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d at 873 (citations omitted);[6] *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also*

---

[6] The Second Circuit has yet to address the impact of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) upon the categories of supervisory liability under *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). *See Grullon v. City of NewHaven*, 720 F.3d 133 (2d Cir. 2013) (noting that the Court's decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement," but declining to resolve the issue). Lower courts have struggled with this issue, specifically whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See, e.g., Sash v. United States*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009). While some courts have taken the position that only the first and third of the five *Colon* categories remain viable and can support a finding of supervisory liability, *see, e.g., Bellamy v. Mount Vernon Hosp.*, 2009 WL1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd*, 387 F. App'x 55 (2d Cir. 2010), others disagree and conclude that whether any of the five categories apply in any particular cases depends upon the particular violations alleged and the supervisor's participatory role, *see, e.g., D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010). Nevertheless, this Court, until instructed to the contrary, continues to apply the entirety of the five factor *Colon* test.

*Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

### 1. Lozier

According to Plaintiff, Mid-State Superintendent Lozier acted with deliberate indifference towards his medical needs. However, Defendant Lozier merely sat in during Plaintiff's first meeting with Dr. Mannava, who was providing Plaintiff with primary care. To the extent that Plaintiff is seeking to hold Defendant Lozier directly liable for inadequate care, it is clear that Lozier was not responsible for his day-to-day medical care. To the extent Plaintiff is seeking to hold Lozier liable under a theory of supervisory liability, there are no facts indicating that Lozier was notified or aware of an ongoing violation of Plaintiff's constitutional rights. *Burton v. Lynch*, 664 F. Supp. 2d 349, 363 (S.D.N.Y. 2009). Nor are there any facts pled establishing any other basis to find Defendant Lozier liable for any constitutional wrongdoing. Thus, the Court recommends **dismissing** Defendant Lozier from this action.

### 2. Koeningsmann

Plaintiff's description of Koeningsmann's involvement in his medical care is grounded in legal conclusions. For instance, Plaintiff alleges that Dr. Koeningsmann was aware of his complaints regarding Mid-State's inadequate medical care services because "several attorneys put him on notice . . . [but] has taken no steps to ensure that

plaintiff receives the so obviously needed exams . . . even at the risk of plaintiff becoming paralyzed or dead[.]" Am. Compl. at ¶ 90. He also alleges that Defendant Koeningsmann was "personally involved in plaintiff's health care (or lack of) and . . . disregard[ed] an excessive risk to plaintiff's health and safety by failing to refer him for diagnostic testing[.]" *Id.* at ¶ 91. Because there is no indica of personal involvement, the Court recommends **dismissing** Plaintiff's Eighth Amendment claim against Koeningsmann.

### 3. LaValley

Plaintiff claims that he was assaulted on May 27, 2010 and June 13, 2010 by Clinton correctional officers. Am. Compl. at ¶ 62. Plaintiff appears to claim that Superintendent LaValley is liable for those assaults.[7] *Id.* at ¶¶ 62-65. To be sure, the bulk of Plaintiff's allegations are legal conclusions and based on pure speculation. For instance, Plaintiff claims that Superintendent LaValley "was aware of the unconstitutional assaults and abuses" because Prison Legal Services "put Mr. LaValley on notice, as did other inmate's families. The letters were passed down to Sgt. Durkin to investigate[.]" *Id.* at ¶ 56. But yet, LaValley "failed to remedy the wrong." *Id.* Plaintiff then speculates that LaValley "allowed the policy and custom of abuse to continue," and "was grossly negligent in managing his subordinates who

---

[7] LaValley "is the Superintendent of Clinton Correctional Facility and is in charge of the supervision and discipline of all correctional staff at [] Clinton[.]" Am. Compl. at ¶ 11.

caused the unconstitutional conditions and events." *Id.* at ¶ 59. Such allegations fail to show his personal involvement. Furthermore, the fact that LaValley referred letters of complaints to staff for further investigation is insufficient to establish his personal involvement in any wrongdoing. *Vegas v. Artus*, 610 F. Supp. 2d 185, 198-99 n.13 (N.D.N.Y. 2009) ("Prison supervisors are entitled to refer letters of complaint to subordinates, and rely on those subordinates to conduct an appropriate investigation and response, without rendering the supervisors personally involved in the constitutional violations alleged in the letters of complaint."). Thus, the Court recommends **dismissing** LaValley from this action.

### 4. Longerman

Plaintiff claims that Defendant Longerman[8] "proximately caused" the May 27th and June 13th assaults because he failed to "correct the known pattern of abuse[.]" Am. Compl. at ¶ 65. However, Plaintiff also states that Longerman "from the IG's Office visited and interviewed plaintiff on or about 6-30-10." *Id.* at ¶ 50(b).[9] Because Longerman's involvement took place almost two weeks after the June 13th assault, Longerman lacks sufficient personal involvement in the alleged assaults. To the extent Plaintiff may be contending that Longerman conducted an inadequate

---

[8] "Longerman[] is employed by []DOCCS Central Office as an Inspector General and was responsible for investigating claims of guard abuses at the Clinton Correctional Facility." Am. Compl. at ¶ 10.

[9] The Amended Complaint contains two paragraphs designated as number "50." The Court will distinguish each paragraph as "50(a)" and "50(b)."

investigation after he was assaulted, "there is 'no instance where the courts have recognized [an] inadequate investigation as sufficient to state a civil rights claim[.]'" *Phelan v. Chin*, 2013 WL 4495796, at *5 (W.D.N.Y. Aug. 19, 2013) (citations omitted). Thus, the Court recommends **dismissing** Longerman from this action.

## D. Eleventh Amendment

Defendants raise Eleventh Amendment sovereign immunity as a defense to all of Plaintiff's § 1983 causes of action alleged against them in their official capacity. Defs.' Mem. of Law at p. 17. The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state

agency in federal court.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796  (N.D.N.Y. 1984).   To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state."  *Rourke v. New York State Dep't. of Corr. Servs.*, 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994) & *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court."  *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.*, 915 F. Supp. at 540.  Nonetheless, where a prisoner has been released from prison, his claims for injunctive relief based

on the conditions of his confinement must be dismissed as moot. *Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 196 (S.D.N.Y. 2000).

Here, Plaintiff is asserting § 1983 claims against the Defendants in both their individual and official capacities. Am. Compl. at ¶¶ 1-16. Plaintiff is seeking compensatory monetary relief, as well as declaratory and injunctive relief. *Id.* at ¶ 1. The Court agrees that the Eleventh Amendment bars Plaintiff from seeking monetary damages from Defendants in their official capacity. *Berman Enterprises, Inc. v. Jorling*, 3 F.3d at 606 (affirming that a § 1983 suit seeking damages from defendants in their official capacity is properly dismiss under the Eleventh Amendment). And, notwithstanding Plaintiff's request for injunctive relief, in light of his release from prison, his claims for damages are limited to monetary damages, which he may only seek from Defendants in their individual capacities. Accordingly, Defendants' request for Eleventh Amendment Immunity should be **granted**. However, Plaintiff is not barred from seeking monetary damages against the Defendants in their individual capacities.

### E. Title II of the ADA & Rehabilitation Act

"Plaintiff has been diagnosed with Dysthymic Disorder []; Polysubstance Abuse Disorder; Borderline Personality Disorder; and Anti-Social Personality Disorder." Am. Compl. at ¶ 106. As a result of his mental condition, Plaintiff suffers from

"depressive slumps," and has "feelings of helplessness and worthlessness." *Id.* at

¶107. His conditions "make work and socializing almost impossible," and he "tend[s]

to be emotionally unstable." *Id.* at ¶ 108. Plaintiff claims that he was assaulted on

May 27th and June 13th because of his mental health disability; though he

simultaneously claims that he was subjected to "beatings" on those days in retaliation

"for constitutionally protected speech." *Id.* at ¶¶ 62, 67, & 109.

The May 27th assault occurred after Defendant Devereaux pricked his finger

on a pencil found in Plaintiff's pocket. *Id.* at ¶ 18. During that assault, "sergeant,

John Doe #4" stated that Plaintiff was "lucky he was not in a [local hospital] because

he stabbed an officer." *Id.* at ¶ 25. He claims that he was denied medical care because

the doctors concluded that his medical conditions were "'in [his] head' or 'not real'

and in [his] 'imagination'" and that "is an exclusion of service . . . and said denial was

and is based solely on [his] mental disabilities." *Id.* at ¶ 126. Plaintiff further states

he was denied medical services when he was escorted to the medical department by

one or more of the Defendants that assaulted him, and they threatened him with

"physical harm" if he informed the medical staff about the assault. Supp. Aff. at p.

3.

Plaintiff also claims that he was "denied access to Clinton's Grievance

Program" as none of his complaints concerning assault and harassment were

processed. *Id.* Yet, he claims to have "properly exhausted his administrative remedies with respect" to those complaints. Am. Compl. at ¶ 69. Plaintiff additionally claims he was excluded from "the ability to leave his cell and to use a phone in the prison yard as he was under threat of imminent harm by Defendant Durkin . . . . Plaintiff was not even able to get commissary and this service was denied to him." Supp. Aff. at p. 3.

The Anti–Discrimination provision of Title II of the ADA, states in pertinent part, that " no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). To bring a claim under Title II of the ADA, a plaintiff must establish that (1) he is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his disability; and (3) the entity providing the service is a public entity. *Farid v. Demars,* 2009 WL 455450, at *4 (N.D.N.Y. Feb. 23, 2009)

(citation omitted).

Similarly, to state a *prima facie* claim for relief under the Rehabilitation Act, a plaintiff must establish that: (1) the entity denying participation or enjoyment receives federal financial assistance; (2) he is a "handicapped person" as defined in the Act; (3) he is "otherwise qualified" to participate in the offered activity or program or to enjoy the services or benefits offered; and (4) he is being excluded from participation or enjoyment solely by reason of his handicap. *See Rothschild v. Grottenthaler,* 907 F.2d 286, 289–90 (2d Cir. 1990). "The main difference between the statutes is that coverage under [the] Rehabilitation Act is limited to entities receiving federal financial assistance, while ADA's reach extends to private entities. When brought together, claims under Title II and Section 504 may be treated identically." *Hilton v. Wright,* 928 F. Supp. 2d 530, 556-57 (N.D.N.Y. 2013) (citing *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d. Cir. 2003)).

### 1. Qualifying Disability

Under the ADA, the term "disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102. A physical or mental impairment can be "[a]ny mental or psychological disorder, such as an intellectual disability . . . [or an] emotional or mental illness[.]" 29 C.F.R. § 1630.2(h)(2); *Skinner v. City of Amsterdam*, 824 F.

Supp. 2d 317, 326 (N.D.N.Y. 2010) (citing to 29 C.F.R. § 1630.2(h) and further discussing the scope of disability within the ADA). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending speaking, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102.

Here, Plaintiff has been diagnosed with Dysthymic Disorder, Polysubstance Abuse Disorder, Borderline Personality Disorder, and Anti-Social Personality Disorder. As a result of his mental illness, he suffers from feelings of "helplessness and worthlessness," and is "emotionally unstable." Am. Compl. at ¶ 107. Plaintiff's mental illness affects his major life activities, such as working and socializing. *Id.* at ¶ 121. At this stage, Plaintiff may have pled a sufficient qualifying disability. However, Plaintiff fails to adequately allege that he was excluded from programs and services due to his disability. For one, Plaintiff's assertion that he met with Drs. Ramineni and Mannava contradicts his vague allegation that he was excluded from receiving medical services at Mid-State. Likewise, Plaintiff fails to show that he was excluded from receiving medical services at Clinton. The fact that several Clinton Defendants threatened him with physical harm if he alerted the Clinton medical staff that they assaulted him, does not demonstrate an exclusion from medical care. In any event, Plaintiff does not allege that he was excluded from obtaining medical services

due to discrimination.

Plaintiff also claims that he was excluded from Clinton's Grievance Program, while simultaneously claiming that he "properly exhausted his administrative remedies" concerning the assaults, harassment, and the threats of physical harm he faced during his time at Clinton. *Id.* at ¶ 69; *see generally id.* at ¶¶ 17-68. As a result, Plaintiff demonstrates that he was not excluded from Clinton's Grievance Program.

Plaintiff additionally claims that he did not have "the ability to leave his cell and to use a phone in the prison yard as he was under threat of imminent harm by Defendant Durkin." Supp. Aff. at p. 3. However, this allegation is devoid of any facts suggesting that his inability to do so relates to a program or service, and he also fails to allege that he was prevented from doing so because of his mental health condition.

Lastly, Plaintiff states he was unable "to get commissary" (*id.*), but there are no facts indicating how Plaintiff was excluded from commissary, or whether that exclusion was due to his disability. Thus, Plaintiff has failed to state a cause of action under the ADA and the Rehabilitation Act and the Court recommends **dismissing** these claims.[10]

## II.  MOTION TO AMEND

Plaintiff seeks leave to file an amended complaint because he has learned the

---

[10] Defendants have raised sovereign immunity as a defense to Plaintiff's ADA claim. However, we need not consider whether sovereign immunity was abrogated because Plaintiff fails to state a Title II ADA claim. *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013).

identity of John Doe #4, and "felt it necessary to expound on his complaint . . .[and] properly name parties" that were not previously named in this action. Dkt. No. 92, Pl.'s Mot. to Am. Plaintiff's Proposed Amended Complaint seeks to add: (1) four additional defendants; (2) the identity of John Doe #4; (2) allegations in support of the original Eighth Amendment inadequate medical care claim; and (3) facts to support the original ADA and Rehabilitation Act claims. *See generally* Dkt. No. 92-1, Proposed Am. Compl.

## A.  Standard of Review

FED. R. CIV. P. 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires." *Tocker v. Philip Morris Co., Inc*., 470 F.3d 481, 491 (2d Cir. 2006); *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993). Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)). District courts are vested with broad discretion to grant a party leave to amend the pleadings. *SCS Commc'n, Inc. v. Herrick Co., Inc*., 360 F.3d 329, 345 (2d Cir. 2004) (citing *Foman v. Davis*, 371 U.S. at 182, for the

proposition that an "outright refusal to grant the leave without any justifying reason

. . . is not an exercise of discretion [but] . . . merely [an] abuse of that discretion and

inconsistent with the spirit of the Federal Rules"); *see also Local 802, Assoc.*

*Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir.

1998). "The party opposing a motion for leave to amend has the burden of

establishing that granting such leave would be unduly prejudicial." *Media Alliance,*

*Inc. v. Mirch*, 2010 WL 2557450, at *2 (N.D.N.Y. June 24, 2010) (quoting *New York*

*v. Panex Indus., Inc.*, 1997 WL 128369, at *2 (W.D.N.Y. Mar. 14, 1997)); *see also*

*Lamont v. Frank Soup Bowl*, 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 27, 2000)

(citations omitted). This requires the non-movant to "do more than simply claim to

be prejudiced." *Breyette v. Amedore*, 205 F.R.D. 416, 417 (N.D.N.Y. 2002) (quoting

*Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F. Supp. 181, 185 (E.D. Pa.

1991)).

## B. Joinder of a Party

As noted above, Rule 15(a) of the Federal Rules of Civil Procedure generally

governs the amendment of complaints, but in the case of proposed amendments where

new defendants are to be added, the Court must also look to Rules 20 and 21. *Ward*

*v. LeClaire*, 2008 WL 182206, at *3 (N.D.N.Y. Sept. 26, 2007) (citing *United States*

*v. Chilstead Building Co.*, No. 96-CV-0641 (N.D.N.Y. Nov. 7, 1997) (McAvoy, C.J.)

(citations omitted)).  Rule 21 states that a party may be added to an action "at any time [and] on just terms."  FED. R. CIV. P. 21.[11]  Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable."  *Goston v. Potter*, 2010 WL 4774238, at *5 (N.D.N.Y. Sept. 21, 2010) (quoting *United States v. Commercial Bank of North America*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962) (internal quotations marks omitted)).  The addition of parties under Rule 21 is guided by the same liberal standard as a motion to amend under Rule 15. *See Ward v. LeClaire*, 2008 WL 182206, at *3; *Varela v. Cnty. of Rensselaer*, 2012 WL 1355212, at *7 (N.D.N.Y. Apr. 18, 2012) (quoting *Fair Housing Dev. Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)).

## C.  Application

### 1.  Futility

As previously mentioned, leave to amend can be denied when there is undue delay, bad faith, undue prejudice to the non-movant, or futility of the amendments. The Second Circuit has stated that where futility is raised as an objection to the motion

---

[11] "Rule 21 cannot be read alone but must be read in the light of Rules 18, 19 and 20[.]" *United States v. Commercial Bank of North America*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962).  In this respect, the federal rules state, in part, that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. FED. R. CIV. P. 20(a)(2).  Rule 20(a)(2) is liberally construed "so as to promote judicial economy and to allow related claims to be tried within a single proceeding." *Equal Emp't Opportunity Comm'n v. Nichols Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 508-09 (W.D.N.Y. 2007) (citing, *inter alia*, *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1127 (2d Cir. 1970)).

to amend, and

> [w]here it appears that granting leave to amend is unlikely to be
> productive, . . . it is not an abuse of discretion to deny leave to amend.
> *See, e.g.*, *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230 (denial not
> abuse of discretion where amendment would be futile); *Health-Chem
> Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("where . . . there is no
> merit in the proposed amendments, leave to amend should be denied");
> *Billard v. Rockwell International Corp.*, 683 F.2d 51, 57 (2d Cir.1982)
> (denial not abuse of discretion where plaintiff had had "access to full
> discovery" in a related case).

*Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

Where futility, as here, is the basis in opposing a motion to amend, the appropriate
review standard is a motion to dismiss pursuant to Rule 12(b)(6). *See supra* Part I.A.

### a. Joinder of Additional Parties

Plaintiff seeks to join the following parties to the litigation: Dale Artus,
Superintendent of Clinton; Brian Fisher, DOCCS Commissioner; DOCCS, "the
entity"; and Mr. Smith, Superintendent of Mid-Sate. Proposed Am. Compl. at ¶¶ 10,
14-15, & 20. However, the Proposed Amended Complaint fails to demonstrate that
these additional parties have sufficient personal involvement with respect to Plaintiff's
§ 1983 causes of action.[12] The Proposed Amendment Complaint is replete with legal
conclusions and vague assertions alleged against Artus, Fisher, and Smith. In
numerous instances, Plaintiff simply alleges that the various parties created and
perpetuated bad policy, failed to train and supervise subordinates, had the "authority

---

[12] *See infra* Part I.C pp. 11-13.

to change or address" the matter, were "made aware" of relevant facts, and "are all personally involved." Proposed Am. Compl. at ¶¶ 81, 83, 84,117-18, 155-57, & 194-99. He also asserts, without any factual support, that he "frequently and excessively wrote" to the various parties and "spoke to [] Smith on several occasions concerning his need for medical care and none was given." *Id.* at ¶¶ 159 & 161. As a result, the Court denies Plaintiff's request to join Artus, Fischer, and Smith to this action as it is futile.

The Court also denies Plaintiff's request to add DOCCS because Plaintiff's § 1983 claims is "clearly barred by the Eleventh Amendment because [DOCCS] is a state agency." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004). In addition, because the Proposed Amended Complaint also fails to state a Title II ADA claim, it is futile to join DOCCS as a defendant in this action. *See infra* Part II.C.1.c.

The Proposed Amended Complaint also seeks to identify G. King, a Clinton Correctional Sergeant, as John Doe #4. Proposed Am. Compl. at ¶ 8. Plaintiff claims that G. King was present when he was taken out of his cell and assaulted on May 27, 2010 and, although not entirely clear from the proposed pleading, he may also have been "one of the sergeants" that directed him to face and grab the bars so that he may be assaulted by other correctional officers. Proposed Am. Compl. at ¶¶ 27-28. Other than generally raising futility, Defendants do not specifically object to Plaintiff

identifying John Doe #4 as one of the individuals who were personally involved in the May 27th assault. Thus, the Court **grants** Plaintiff's request to identify G. King as John Doe #4. Plaintiff may only proceed against G. King in his individual capacity.

### b. *Longerman, LaValley, Lozier, Koeningsmann*

The proposed allegations are similarly replete with legal conclusions and naked assertions against Defendants Longerman, LaValley, Lozier, and Koeningsmann. For instance, Plaintiff claims that Longerman was "aware of the systematic beatings occurring in the APPU," that "Superintendent LaValley knew of the increased suicides . . . was made aware of such facts by plaintiff," and that Artus "was responsible for unconstitutional conditions." Proposed Am. Compl. at ¶¶ 72-76, 78-84, & 88. Plaintiff adds that he "frequently and excessively wrote to" Lozier asking him to "address the medical care deficiencies that were systemic in the unit," and that he "frequently spoke to Lozier concerning his medical needs not being addressed[.]" Proposed Am. Compl. at ¶¶ 159-60. These allegations are vague and devoid of any factual content. As a result, the Court **denies** Plaintiff's request to add additional facts pertaining to Longerman, LaValley, Lozier, and Koeningsmann.

### c. *Title II of the ADA and Rehabilitation Act*

The Proposed Amended Complaint fails to establish a Title II ADA[13] claim for

---

[13] Title II of the ADA and Rehabilitation Act legal standard can be found at *supra* Part I.E.

the very same reason Plaintiff failed to state an ADA claim in the operative pleading: Plaintiff's allegations do not demonstrate that he was excluded from participating in programs or services due to his disability. According to the Proposed Amended Complaint, he was denied "adequate medical care" because of the doctors' "discriminatory belief" that his medical condition was "not real," and he was threatened with physical harm. Proposed Am. Compl. at ¶¶ 189 & 190-91. He also claims, without providing any factual context, that he was not allowed to use the telephone, prevented from going to "commissary and recreation," and "denied proper utilization of the Inmate Grievance Program." *Id.* at ¶¶ 190 & 194.[14] Thus, the Court **denies** Plaintiff's request to add allegations in support of his ADA and Rehabilitation Act claims as it would be futile.

### d. Deliberate Indifference

As previously discussed in *supra* Part I.D, the operative pleading states an Eighth Amendment cause of action for inadequate medical care. The Proposed Amended Complaint expands and embellishes this claim. Proposed Am. Compl. at ¶¶ 99, 134-40, 145, 147, 150, & 153. The Court notes that there is a thread of recent cases that find it unnecessary, even futile, to plead or replead additional facts to the existing and surviving claims for the sole purpose of expounding. *S.E.C. v. Yorkville*

---

[14] The Proposed Amended Complaint contains two paragraphs designated as "194." The Court cites to the first paragraph designated as "194."

*Advisors, LLC*, 2013 WL 5350658, at *1 (S.D.N.Y. Sept. 20, 2013) (noting that the original complaint already contained sufficient allegations to state a claim and the proposed amendments were thus unnecessary to state a claim for relief); *Rahman v. Fischer*, 2012 WL 3392010, at *13 (N.D.N.Y. Sept. 28, 2012) (advising that where the substantive allegations already appear clearly in the complaint and there is no discernible nexus between the alleged events, the amendments would be futile); *Vann v. Fischer*, 2010 WL 2889538, at *2 (W.D.N.Y. July 21, 2010) (finding that "the additional allegations merely reiterate and embroider the claims . . ., adding little, if anything, of substance to the case").  This Court shares the same sentiment that adornments, embroidering, embellishments, and aggrandizements within a complaint are unnecessary; they just clutter and confound all that is required for a well-pled pleading, and amount to being superfluous.  Though sufficient facts must be pled, the Court holds the view that it is bad form to include every known fact that consequently nudges a clear and concise pleading into the realm of becoming unabridged.  *Iqbal* does not require that all known facts be pled, just sufficient facts to plausibly state a cause of action.

However, because the Plaintiff is proceeding *pro se,* the Court will **grant**

Plaintiff leave to add the proposed paragraphs[15] in support of his inadequate medical care claim. The Court does not find that such leave would be prejudicial to the Defendants because the new allegations involve claims that we recommend should survive the present dispositive motion, and discovery has not yet concluded. *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D 193, 200 (S.D.N.Y 2014). In addition, discovery has been stayed since July 15, 2014. Dkt. No. 97, Order, dated July 15, 2014. Furthermore, the Court is prepared to further extend the stay on discovery and direct Plaintiff to submit a proposed amended complaint to the Court in accordance with the directives herein, which the undersign will review to minimize, if any, the prejudicial effect on the Defendants.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' partial Motion for Judgment on the Pleadings (Dkt. No. 86) be **GRANTED IN PART AND DENIED IN PART** as follows:

1) **DENIED** as to Plaintiff's Eighth Amendment claims for deliberate indifference to his serious medical needs;

2) **GRANTED** as to Plaintiff's ADA and Rehabilitation claims, which should

---

[15] Proposed paragraphs designated as 99, 108, 132-40, 145-54, 158, 163 relate to Plaintiff's deliberate indifference claim.

be **DISMISSED WITH PREJUDICE**;

3) **GRANTED** as to Plaintiff's claims against the Defendants in their official capacities;

4) **GRANTED** as to claims pled against Defendants Lozier, Koeningsmann, LaValley, and Longerman, and these Defendants should be **DISMISSED** from this action; and it is further

**ORDERED**, that Plaintiff's Motion to Amend (Dkt. No. 92) is **GRANTED IN PART AND DENIED IN PART** as follows:

1) **GRANTED** to the limited extent Plaintiff seeks to identify G. King as John Doe #4 and add additional facts in support of the Eighth Amendment medical indifference claim;

2) **DENIED** in all other respects; and it is further

**ORDERED**, that should the assigned District Judge accept the above recommendations, Plaintiff should be directed to submit for review a Proposed Amended Complaint that is consistent with the Court's directives; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed

with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: March 3, 2015
        Albany, New York

Randolph F. Treece
U.S. Magistrate Judge