**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BARRY BERMAN,

                                        Plaintiff,

             - v -                                              Civ. No. 9:13-CV-0136
                                                                        (LEK/DJS)
CHARLES DURKIN, *et al.*,

                                        Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

BARRY BERMAN
Plaintiff, *Pro Se*
20 Glenn Cove Rise
Rochester, New York 14617

HON. ERIC T. SCHNEIDERMAN                      JOSHUA E. McMAHON, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## <u>REPORT-RECOMMENDATION and ORDER</u>

        *Pro se* Plaintiff Barry Berman commenced this civil rights action on February 1, 2013.  Dkt.

No. 1, Compl.  The following claims remain: (1) an Eighth Amendment excessive force claim

against Defendants Correction Officer ("C.O.") Devereaux, Sergeant ("Sgt.") King, and John Does

## 1-3 and # 5 arising from an alleged assault on May 27, 2010; (2) an Eighth Amendment excessive

force claim and a First Amendment retaliation claim against Defendants C.O. Mitchell and Sgt.

Durkin arising from an alleged assault on June 13, 2010 that occurred in retaliation when Plaintiff

reported the May 27, 2010 incident; and (3) Eighth Amendment deliberate medical indifference

claims against Defendant Drs. Ramineni and Mannava. *See* Dkt. No. 127, Am. Compl.

Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 190, Defs.' Mot. Summ. J. Defendants argue that: (1) Plaintiff's claims against the unidentified John Doe Defendants should be dismissed; (2) Plaintiff failed to exhaust his administrative remedies with respect to his claims arising from the incidents alleged to have occurred on May 27, 2010 and June 13, 2010; and (3) Defendants are entitled to summary judgment on each of Plaintiff's claims. *Id.* Despite being granted two extensions of time to file a response, Plaintiff has not filed a response. Dkt. Nos. 194 & 198. For the reasons that follow, the Court recommends that Defendants' Motion be **granted in part and denied in part**.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more

than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). "A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist." *Colon v. Coughlin*, 58 F.3d at 872.

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3); *see also* N.D.N.Y.L.R. 7.1(b)(3) ("Where

a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion."). "If the evidence adduced in support of the summary judgment motion does not meet [the movant's] burden [of production], 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" *Amaker v. Foley*, 247 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "An unopposed summary judgment motion may also fail where the undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.'" *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)). "In the case of a *pro se*, the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate." *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014).

Pursuant to this District's Local Rules, "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y.L.R. 7.1(a)(3). Although a *pro se* litigant is entitled to a liberal construction of his filings, *see Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013), his *pro se* status does not relieve him of his obligation to comply with the relevant procedural rules, *see Edwards v. INS*, 59 F.3d 5, 8-9 (2d Cir. 1995). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that the court may in its discretion opt to conduct a review of the entire record even where one of the parties has failed to file a 7.1 statement. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Jackson v. Fed. Exp.*, 766 F.3d at 194 (noting that "the court may rely on other

evidence in the record even if uncited" in determining the undisputed material facts). Due to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record to ascertain the undisputed material facts. The Court will cite to the facts as set forth in Defendants' Rule 7.1 Statement of Facts only when properly supported by the record. Dkt. No. 190-16, Defs.' Rule 7.1. Statement of Material Facts ("Defs.' SMF"); *see also GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

## II. MAY 27, 2010 AND JUNE 13, 2010 EXCESSIVE FORCE INCIDENTS

### A. Background

The Court here summarizes Plaintiff's allegations and sets forth the undisputed material facts regarding the alleged assaults that occurred on May 27 and June 13, 2010, when he was incarcerated at Clinton Correctional Facility ("Clinton").

On May 27, 2010, Plaintiff was going to the yard when he was stopped by Defendant C.O. Devereaux for a pat frisk. Defs.' SMF at ¶ 38; Am. Compl. at ¶ 15. Plaintiff stated that there was nothing in his pockets, but alleges that he forgot that he was carrying a pencil. Defs.' SMF at ¶ 38; Am. Compl. at ¶16. As C.O. Devereaux searched Plaintiff, he reached into Plaintiff's right front pocket and pricked his finger on the pencil. Defs.' SMF at ¶ 38. Plaintiff alleges that he returned to his cell and that C.O. Devereaux later came and discussed the incident. Am. Compl. at ¶ 17. Plaintiff apologized and explained that he was taking medication and C.O. Devereaux stated that he

would meet with his supervisor regarding whether to issue a misbehavior report. *Id.*

Approximately ten minutes after his conversation with C.O. Devereaux, Plaintiff claims that C.O. Devereaux, Defendant Sgt. King, and John Does ## 1-3 came and ordered him to exit his cell. *Id.* at ¶ 18. The Defendants ordered Plaintiff to face and grab the cell bars, which Plaintiff did. *Id.* at ¶ 19. Plaintiff was then punched repeatedly in his head, sides, and back. *Id.* Plaintiff collapsed, but was ordered to get up, and when he did, was again punched repeatedly in his head, sides, and back. *Id.* at ¶¶ 21-23. Plaintiff attempted to look at one of the John Doe Defendant's name tags, but was ordered to look away. *Id.* at ¶ 23. The Defendants warned Plaintiff that if he reported the assault, they would return and "it would be worse." *Id.* at ¶ 24. No Unusual Incident Report was filed regarding the alleged assault. Defs.' SMF at ¶ 45. Defendants C.O. Devereaux and Sgt. King deny that they assaulted Plaintiff on any occasion. *Id.* at ¶¶ 51-52.[1]

On May 28, 2010, the following day, Plaintiff went to sick call. Am. Compl. at ¶ 25. Plaintiff claims that he was accompanied by C.O. Bushey who threatened him not to report the assault. *Id.* Plaintiff complained of pain on his right side and stated that he had fallen down some stairs. Dkt. No. 190-1, Decl. of Joshua McMahon, dated Aug. 25, 2016, Ex. A,[2] at p. 413. No bruising or marks were noted and Plaintiff was observed getting onto and off of the exam table without signs of pain or discomfort. *Id.*

As a result of the pat frisk conducted by C.O. Devereaux, Plaintiff was issued a misbehavior report, which charged him with making false statements, refusing a direct order, and refusing a

---

[1] Defendants' Motion papers do not include affidavits of the correctional officer Defendants, but rather contain unsworn statements taken during investigation of Plaintiff's allegations. *See* Dkt. No. 190-5, Decl. of Joshua McMahon, dated Aug. 25, 2016, Ex. D, at pp. DEF000473-486.

[2] Exhibit A to the McMahon Declaration is at Docket Number 190-2.

search or frisk. Defs.' SMF at ¶ 40. A Tier II Disciplinary Hearing was held on June 1, 2010. *Id.* at ¶ 41. Plaintiff testified at the hearing, but was found guilty of the charges and assessed with fifteen days loss of recreation, phone, packages, and commissary. *Id.* at ¶ 43. Plaintiff appealed the determination and it was affirmed. Dkt. No. 190-3, McMahon Decl., Ex. B,[3] at p. 23.

On June 8, 2010, Plaintiff sent a complaint concerning the alleged assault to the New York Inspector General ("IG"). McMahon Decl., Ex. D,[4] at pp. DEF000511-000514. In his Amended Complaint, Plaintiff alleges that Defendant Sgt. Durkin acquired a copy of the letter to the IG and attempted to instigate other inmates to retaliate against Plaintiff for being a "snitch." Am. Compl. at ¶ 29. Plaintiff claims that on June 13, 2010, Defendants Sgt. Durkin and C.O. Mitchell came to his cell and escorted him to a room at the front of the block. *Id.* at ¶ 30. Sgt. Durkin then told Plaintiff that he was going to ask him questions about his letter to the IG and that whenever he gave a wrong answer, C.O. Mitchell would punch him in the face. *Id.* Sgt. Durkin proceeded to ask Plaintiff questions and C.O. Mitchell punched Plaintiff at least ten times in the face. *Id.*

Defendants then escorted Plaintiff to Sgt. Durkin's office. *Id.* at ¶ 31. Prior to entering the office, Sgt. Durkin ordered Plaintiff to face and grab the bars in order to be searched. *Id.* While Plaintiff was holding the bars, C.O. Mitchell repeatedly punched Plaintiff in his head, back, and sides. *Id.* Plaintiff was then taken into the office and further questioned. *Id.* at ¶ 32. The Defendants accused Plaintiff of having contraband tattoo guns and threatened him not to report the incident. *Id.* at ¶¶ 33 & 35. Again, no Unusual Incident Report was filed regarding this alleged assault. Defs.' SMF at ¶ 45. Plaintiff was not taken to medical following the incident and next went

---

[3] Exhibit B to the McMahon Declaration is at Docket Number 190-3.

[4] Exhibit D to the McMahon Declaration is at Docket Numbers 190-5, 190-6, 190-7, and 190-8.

to sick call on June 24, 2010, where he again did not report any assault by staff. *Id.* at ¶ 36. Plaintiff alleges that, on June 17, 2010, photographs were taken of the "visible injuries" to his face.[5] Am. Compl. at ¶ 38.

Following the alleged incidents on May 27 and June 13, Plaintiff alleges that Sgt. Durkin continued to harass and threaten him. Plaintiff alleges that Sgt. Durkin moved Plaintiff's cell twice and confiscated some of his legal papers, envelopes, and toilet paper. *Id.* at ¶¶ 46, 48, & 52. Sgt. Durkin allegedly threatened Plaintiff to not talk about the incidents. *Id.* at ¶ 47. Plaintiff also claims that Sgt. Durkin stated that he planned to "set [P]laintiff up" by submitting a memo identifying Plaintiff as a drug dealer. *Id.* at ¶ 49. Plaintiff alleges that he suffered lasting abdominal pain following the alleged assaults. *Id.* at ¶ 71.

## B. John Doe Defendants

Defendants first move to dismiss Plaintiff's claims against the unidentified John Doe Defendants, who allegedly participated in the May 27, 2010 assault. Dkt. No. 190-15, Defs.' Mem. of Law at pp. 2-3. In the District Court's initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), Plaintiff was advised that he must "take reasonable steps through discovery to ascertain the identity of any Doe Defendants and, if appropriate, file a motion to amend his Amended Complaint . . . to add any such individual." Dkt. No. 17 at p. 11. Through discovery, Plaintiff was able to identify "John Doe # 4" as Sgt. King, but was unable to identify any of the other Doe Defendants. *See* Dkt. No. 112 at pp. 28-29. "Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice." *Delrosario v. City of New York*, 2010 WL 882990, at *5

---

[5] These photographs are not in the record.

(S.D.N.Y. Mar. 4, 2010). Dismissal of an unidentified Doe Defendant is appropriate pursuant to FED. R. CIV. P. 41(b), which permits a court to dismiss an action for failure to prosecute or to comply with a court order, and FED. R. CIV. P. 4(m), under which a court must dismiss, absent a showing of "good cause," claims against a defendant who is not served within ninety days of the filing of the complaint. *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 501-02 (N.D.N.Y. 2009). Therefore, because discovery is closed and Plaintiff has not identified Defendant John Does ## 1-3 and John Doe # 5, the Court recommends that Plaintiff's claims against those Defendants be **dismissed**.

## C. Exhaustion

Defendants argue that Plaintiff's claims arising from the May 27, 2010 and June 13, 2010 incidents should be dismissed on the ground that he failed to exhaust his administrative remedies.

### 1. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id*. at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with

"deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).[6]

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). In addition, an inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

In addition to the formal grievance procedure described above, the regulations provide for an expedited grievance procedure for claims of employee "harassment." N.Y. COMP. CODES R. &

---

[6] Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Defendants properly raised the affirmative defense in their Answer. *See* Dkt. Nos. 143 at ¶ 14 & 170 at ¶ 14.

REGS. tit. 7, § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c).

If the superintendent determines that the allegations do not represent a bona fide case of harassment, the allegations are automatically routed to the IGRC for resolution according to the formal three-step grievance procedure outlined above. *Id.* at § 701.8(c). If the superintendent finds that the allegations do represent a bona fide case of harassment, then he must either initiate an in-facility investigation by higher ranking personnel, or request an investigation by the IG's Office, and if criminal activity is involved, the superintendent may request an investigation by the New York State Police Bureau of Criminal Investigations. *Id.* at §§ 701.8(d); *see also Perez v. Blot*, 195 F. Supp. 2d 539, 542-43 (S.D.N.Y. 2002) (describing the grievance system).

The superintendent must render a decision within twenty-five calendar days of receipt of the grievance. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8(f). If the superintendent fails to respond within this required time-frame, the inmate may appeal his grievance to CORC by filing a notice of decision to appeal with the inmate grievance clerk. *Id.* at § 701.8(g). If the inmate receives a response from the superintendent and wishes to appeal to CORC, he must file a notice of decision to appeal with the inmate grievance clerk within seven calendar days of receipt of the response. *Id.* at § 701.8(h).

In sum, the expedited procedure set forth above allows inmates to bypass filing a formal grievance by instead "reporting" the incident. *See Perez v. Blot*, 195 F. Supp. 2d at 544. Such a process is wholly consistent with the underlying concern of employee harassment.

## 2. *Plaintiff's Failure to Exhaust Administrative Remedies*

The record establishes that Plaintiff did not file grievances with the IGP at Clinton relative to his claims arising from the May 27, 2010 and June 13, 2010 incidents. In the records provided by Defendants, it appears that the Clinton IGP received seven grievances filed by Plaintiff, all of which concerned Plaintiff's medical problems. *See* McMahon Decl., Ex. B. These seven grievances do not complain of the alleged assaults or of injuries that Plaintiff incurred in such assaults. *See id.* Plaintiff only appealed five of these grievances to CORC. *See* Dkt. No. 190-19, Decl. of Jeffery Hale, dated Aug. 17, 2016, Ex. B.

Normally, the absence of records of an appeal to CORC would be sufficient to establish Plaintiff's failure to exhaust his administrative remedies. However, in addition to the seven grievances received by the Clinton IGP, the record contains numerous other letters sent by Plaintiff, which require further discussion. These letters include the following:

- Two letters addressed to legal aid attorneys, dated June 3, 2010 and June 6, 2010, in which Plaintiff complains of the May 27 assault and numerous other assaults allegedly occurring in Clinton. McMahon Decl., Ex. D, at pp. DEF000491-495 & DEF000497-499.

- Three letters addressed to Superintendent LaValley and Deputy Superintendent Racette, dated July 11, 2010, July 12, 2010, and July 13, 2010, requesting protective custody on account of fear of assaults by staff. *Id.* at pp. DEF000528-529 & DEF000538-539.

- A letter addressed to the IG's office, dated June 8, 2010, complaining of the May 27 assault. *Id.* at pp. DEF000511-514.

- Grievance letters addressed to the supervisor of the IGP, dated June 4, 2010 and June 30, 2010, complaining, respectively, of the May 27 and June 13 assaults. *Id.* at pp. DEF000533-536. These letters are notated as "received" in the upper right corners, but are not stamped as received by the IGP and do not have assigned grievance numbers. *Id.*

*-12-*

- A letter addressed to Superintendent LaValley, dated July 6, 2010, claiming that Plaintiff's grievances were not being processed. *Id.* at p. DEF000545.

The record also includes Grievance No. MS-20123-10, which was filed on July 28, 2010 at Mid-State. Hale Decl., Ex. C. In MS-20123-10, Plaintiff claims that he filed grievances following the May 27 and June 13 incidents that were never processed. *Id.* at p. DEF000611. MS-20123-10 was denied because there were no grievances on record at Clinton alleging staff misconduct. Hale Decl., Ex. C at p. DEF000610. Additionally, in his Amended Complaint, Plaintiff alleges, in conclusory terms, that grievances filed against corrections officers at Clinton would not be processed; Plaintiff claims that he attempted to file several grievances that were either not processed or accepted. Am. Compl. at ¶¶ 58 & 61.

Many of the letters noted above—in particular, the letters addressed to the Superintendent requesting protective custody and raising other complaints and the letter requesting investigation by the IG's office—are insufficient to satisfy the exhaustion requirement. Generally, "the law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA." *Timmons v. Schriro*, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015); *see also Muhammad v. Pico*, 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003) ("District court decisions in this circuit have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements."); *Grey v. Sparhawk*, 2000 WL 815916, at *2 (S.D.N.Y. June 23, 2000) ("Any complaint . . . made directly to the Inspector General's office does not serve to excuse plaintiff from adhering to the available administrative procedures."). Thus, Plaintiff's informal complaints outside of the grievance process, even if they might have had the effect of providing notice of his claims, are insufficient to exhaust his administrative remedies.

However, a different conclusion follows from the two grievances addressed to the IGP and MS-20123-10. Together, this record evidence indicates (1) that Plaintiff attempted to raise his assault complaints by filing grievances with the IGP, (2) that Clinton staff notated/stamped the grievances as "received," and (3) that his grievances were never processed or filed with the IGP. This record evidence creates an issue of fact as to whether administrative remedies were available to Plaintiff. Specifically, although both grievances are notated as "received," it is unclear how or if they were processed. Were these grievances simply not processed? Or were they treated as harassment grievances and investigated by the Superintendent's office (the June 4 grievance is stamped as received by the Superintendent's office)? Notably, Defendants do not provide an affidavit of either the inmate grievance supervisor at Clinton or any other individual with personal knowledge of how these grievances were processed. As the Court describes below, the failure to resolve such questions creates an issue of fact as to whether administrative remedies were available to Plaintiff.

Defendants' argument as to the unfiled grievances is that even if the grievances were never processed, Plaintiff was nonetheless obligated under DOCCS regulations to appeal and complete the grievance process when he did not receive a response. *See* Defs.' Mem. of Law at p. 8 (citing *Goodson v. Silver*, 2012 WL 4449937, at *4 (N.D.N.Y. Sept. 25, 2012)). This, however, is no longer an accurate statement of the law after the Second Circuit's decision in *Williams v. Priatno*, 829 F.3d 118 (2d Cir. 2016).

*Williams* was issued following the Supreme Court's decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016), in which the Supreme Court clarified the circumstances in which a failure to exhaust may be excused. As the *Ross* Court stated, "[a]n inmate . . . must exhaust available remedies, but

need not exhaust unavailable ones." 136 S. Ct. at 1858. The Court stated three potential circumstances where administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

In *Williams*, after the district court granted the defendants' motion to dismiss on non-exhaustion, the Second Circuit considered whether administrative remedies had actually been "available" to the plaintiff, applying the "unavailability" inquiry outlined in *Ross*.[7] *Williams v. Priatno*, 829 F.3d at 123. The plaintiff alleged that, while housed in the special housing unit ("SHU"), he drafted a grievance that he delivered to a correction officer to forward to the grievance office on his behalf. *Id.* at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id.* at 121. He never received a response to his grievance and he alleged that it was never filed by the correction officer to whom he had given it. *Id.* It was undisputed that he never appealed the grievance. *Id.*

The defendants argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id.* at 124. The defendants relied on a DOCCS regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not

---

[7] The Circuit recognized that *Ross* "supplant[ed]" the inquiry which had been set forth in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), excusing the failure to exhaust when: "(1) administrative remedies are not available to the prisoner; (2) defendants have either wived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d at 686).

receive a timely response." *Id.* (quoting N.Y. COMP. CODES R. & REGS. tit. 7, § 701.6(g)(2)). The Second Circuit rejected this argument and held that for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id.* The Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed . . . [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id.* Thus, *Williams* holds that "the process to appeal an *unfiled* and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id.* at 126 (emphasis added); *see also Juarbe v. Carnegie*, 2016 U.S. Dist. LEXIS 140241, at *19 n.13 (N.D.N.Y. Oct. 7, 2016) (explaining that *Williams* appears to draw a distinction between an "unfiled and unanswered" grievance and a simply "unanswered" grievance, insofar as the regulations provide that an inmate may appeal an unanswered grievance), *report and recommendation adopted by*, 2016 U.S. Dist. LEXIS 162262 (N.D.N.Y. Nov. 23, 2016).

Returning to the case at hand, the Court finds that the record, viewed in the light most favorable to Plaintiff, suggests that Plaintiff's grievances were unfiled and unanswered, creating an issue of fact as to the availability of administrative remedies under *Williams*. Defendants' failure to provide an affidavit explaining how Plaintiff's grievances were processed is insufficient to carry their burden of proving the affirmative defense on the present record. Accordingly, the Court recommends that Defendants' Motion for Summary Judgment on Plaintiff's claims arising from the May 27 and June 13 incidents be **denied**. If this recommendation be accepted, the Court recommends that an exhaustion hearing be scheduled prior to any trial of this case.

**D. Whether Summary Judgment is Appropriate on Plaintiff's Excessive Force Claims**

Under the Eighth Amendment's prohibition on "cruel and unusual punishment," "inmates

have the right to be free from the 'unnecessary and wanton infliction of pain' at the hands of prison officials." *Romano v. Howarth*, 998 F.2d 101, 104 (2d Cir. 1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In the context of an inmate's excessive force claim, the core inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 302-21 (1986)). To assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) an objective component focusing "on the harm done in light of contemporary standards of decency," and (2) a subjective component showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson v. McMillian*, 503 U.S. at 8 and *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)).

With respect to the objective component, the inmate must establish that the conduct alleged is "sufficiently serious" to reach constitutional dimensions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This inquiry is "context specific, turning upon contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d at 263. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated. This is true whether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. at 9 (citation omitted). Nonetheless, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). "The Eighth Amendment's prohibition of 'cruel and unusual punishment' necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of

force is not of a sort 'repugnant to a conscience of mankind.'" *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. at 327). In this regard, "[t]he extent of injury may . . . provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Id.* at 38. "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Hudson v. McMillian*, 503 U.S. at 7.

To determine whether defendants acted maliciously or wantonly at the subjective prong, a court must consider:

> the extent of the plaintiff's injuries; the need for the application of force; the correlation between that need and the amount force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

*Romano v. Howarth*, 998 F.2d 101 at 105 (citing *Hudson v. McMillian*, 503 U.S. at 7).

As stated by the Second Circuit, "*Hudson* simply makes clear that excessive force is defined as force not applied in a 'good faith effort to maintain or restore discipline.'" *Blyden v. Mancusi*, 186 F.3d at 263 (quoting *Hudson v. McMillian*, 503 U.S. at 7).

In this case, Plaintiff asserts excessive force claims arising out of the May 27, 2010 and June 13, 2010 incidents. On both occasions, Plaintiff alleges that he was "repeatedly" punched, without provocation, in his head, back, and sides. *See* Am. Compl. at ¶¶ 21 & 30. The basis of Defendants' Motion is that (1) under *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), no reasonable jury could credit Plaintiff's version of events and (2) Plaintiff's medical records establish that he suffered only minor injuries and therefore, Defendants, at most, applied *de minimis* force. Defs.' Mem. of Law at pp. 10-13. For the reasons stated below, the Court recommends that Defendants' Motion be **denied**.

Defendants argue that Plaintiff's allegations are not credible because: (1) he did not seek medical attention immediately following the May 27 incident; (2) he did not mention an assault when he was seen at sick call on May 28, June 1, and June 7, but instead claimed that he had fallen down stairs; (3) he did not request medical attention immediately following the June 13 incident and was not seen in sick call until June 24, and he again did not report that he had been assaulted; (4) Plaintiff testified at the Tier II Disciplinary Hearing for the May 27 misbehavior report but did not mention the assault; and (5) the IG's investigation of Plaintiff's allegations found that they could not be proven. *Id.* Defendants rely on *Jeffreys*, where the Second Circuit held that "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff' . . . without making some assessment of the plaintiff's account." *Jeffreys v. City of New York*, 426 F.3d at 554 (citation omitted).

The Court does not agree that the "rare circumstance" described in *Jeffreys* applies here. Although it is correct that Plaintiff's claims are almost exclusively based on his own allegations in his verified Amended Complaint, in order for *Jeffreys* to apply, Plaintiff's accounts must be "contradictory and incomplete." *Id.* at 554. In *Jeffreys*, for example, the plaintiff claimed that several police officers had beaten him and thrown from a third story window. *Id.* at 551. However, before he filed his federal action, he had confessed on at least three occasions that he had jumped out of the window. *Id.* at 552. Furthermore, he was unable to identify or even describe any of the officers who allegedly participated in the attack. *Id.* Here, by contrast, Plaintiff's account of the events has been entirely consistent; there are no significant discrepancies between the allegations in the verified Amended Complaint and Plaintiff's claims in his grievances and other complaint

letters. *Compare* Am. Compl. at ¶¶ 15-35 *with* McMahon Decl., Ex. D, at pp. DEF000492-493, DEF000498, DEF000511-512, & DEF000533-536. Defendants do not identify any contradictory account or explain how Plaintiff's account is incomplete.

Instead of pointing to any inconsistencies in Plaintiff's account, Defendants focus on evidence in the record that undermines Plaintiff's account—namely, the minimal medical evidence. However, the "narrow exception" in *Jeffreys* applies where the plaintiff's account is "so lacking in credibility that no reasonable juror could find for the plaintiff." *Blake v. Race*, 487 F. Supp. 2d 187, 202 (E.D.N.Y. 2007). Although the minimal medical evidence may tend to undercut Plaintiff's credibility, it does not render it so thoroughly unbelievable that the Court should reject it as a matter of law. Defendants ignore certain allegations and record evidence that the Court must consider in viewing the evidence in the light most favorable to Plaintiff. First, Plaintiff claims that he was threatened not to report the assaults and was accompanied by a corrections officer to sick call. Am. Compl. at ¶¶ 24-26 & 35. He alleges that he reported that he injured himself falling down the stairs in order to avoid retaliation. *Id.* at ¶ 26. Second, Plaintiff's medical records show that he reported pain in his ribs, consistent with his allegations of the assaults, for several weeks. *See* Hale Decl., Ex. C at pp. DEF000627-628 & DEF000633. Plaintiff also received x-rays of his ribs on May 28, 2010, *id.* at p. DEF000624, although he claims that the x-rays were of the wrong area, *id.* at p. DEF000611. Thus, the medical records provide some corroboration for Plaintiff's version of the events. Furthermore, even in the absence of medical evidence, "[c]ourts in this district have not required that injuries caused by the alleged use of excessive force be corroborated by medical records." *Ninortey v. Shova*, 2008 WL 4067107, at *12 (S.D.N.Y. Sept. 2, 2008).

Considering all of the evidence,[8] the Court finds that Plaintiff's account of the events is not so implausible that it may be rejected as a matter of law. The evidence pointed to by Defendants essentially goes to Plaintiff's credibility, and "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).

Defendants next argue that even if the Court accepts Plaintiff's allegations at true, his medical records establish that he suffered, at most, minor and temporary injuries and therefore any forced applied was necessarily *de minimis*. Defs.' Mem. of Law at pp. 13-14. Defendants' contention fails because while "[t]he extent of injury may . . . provide some indication of the amount of force applied . . . it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. at 37-38. "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Hudson v. McMillian*, 503 U.S. at 7. Here, Plaintiff's alleges more than a *de minimis* application of force: namely, that Defendants "repeatedly" punched him in his head, ribs, and back in order to cause him harm on two occasions. Am. Compl. at ¶¶ 22 & 30-31. Plaintiff's medical records document that he complained of pain in his ribs consistent with his excessive force allegations for several weeks following the assaults. The medical records do not disclose injuries that are so minor that the Court can conclude that Defendants applied *de minimis* force.

Accordingly, for the foregoing reasons, the Court recommends that Defendants' Motion for Summary Judgment on Plaintiff's excessive force claims be **denied**.

---

[8] The Court again notes that Defendants have not offered affidavits from any of the officers accused of using excessive force contradicting Plaintiff's version of events. The only evidence offered by Defendants are unsworn statements. McMahon Decl., Ex. D at pp. DEF000473-486. Under *Jeffrys*, the defendant "still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Jeffreys v. City of New York*, 426 F.3d at 554.

**E.  Whether Summary Judgment is Appropriate on Plaintiff's Retaliation Claim**

Defendants also move for summary judgment on Plaintiff's retaliation claim against Defendants Sgt. Durkin and C.O. Mitchell.  To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected speech or conduct, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity.  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  Briefly stated, Plaintiff's retaliation claim is that (1) he engaged in a protected conduct by sending a complaint letter to the IG's office and (2) after Sgt. Durkin obtained a copy of the letter, he and C.O. Mitchell assaulted Plaintiff.  *See* Am. Compl. at ¶¶ 29-35.  Defendants argue that summary judgment is appropriate on Plaintiff's retaliation claim on the same ground that they argued for summary judgment on his excessive force claim: that is, "no reasonable jury could conclude that Plaintiff was subjected to the adverse action."  Defs.' Mem. of Law at p. 15.  Since the Court has found a disputed issue of fact on whether Plaintiff was subjected to excessive force, the Court therefore recommends that Defendants' Motion also be **denied** as to Plaintiff's retaliation claim.

### III.  PLAINTIFF'S MEDICAL INDIFFERENCE CLAIMS

#### A.  Legal Standard

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "[T]he plaintiff must allege conduct that is 'repugnant

to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.* The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). In cases where medical treatment is

given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### B. Analysis

The basis of Plaintiff's Eighth Amendment claims against Defendants Dr. Ramineni and Dr. Mannava is that he was denied adequate medical treatment for his complaints of headaches, fungus on his hands and feet, sinus problems, abdominal pain, back pain, left shoulder pain, right elbow

pain, high cholesterol, and a wart on his right finger. Am. Compl. at ¶¶ 96 & 111-17. The record, however, documents that Plaintiff received extensive treatment for his medical conditions. Between July 16, 2010 and June 14, 2013, Plaintiff was seen by medical personnel at Mid-State approximately 250 times. Defs.' SMF at ¶ 55. Based on the voluminous medical records provided by Defendants, and for the reasons set forth below, the Court recommends that summary judgment be **granted** on Plaintiff's deliberate medical indifference claims.

### 1. Shoulder Pain

Plaintiff repeatedly complained of left shoulder pain, which was incident to acromioplasty surgery that he had five years earlier. *See* Ramineni Decl. at ¶ 22 (citing dates on which Plaintiff complained of shoulder pain at pp. DEF000362, DEF000365, DEF000366, DEF000390, DEF000391, DEF000392, DEF000393, DEF000394, DEF000396, DEF000397, DEF000434, DEF000436, and DEF000438). "[C]hronic pain can be a serious medical condition." *Price v. Reilly*, 697 F. Supp. 2d 344, 363 (E.D.N.Y. 2010) (citing *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003)). Furthermore, courts have found allegations of "severe pain" and "reduced mobility" in the shoulder sufficient to raise issues of fact as to whether a "shoulder injury constitutes a sufficiently serious medical condition to satisfy the objective prong of the deliberate indifference standard." *Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006). However, based on its review of the record, the Court finds that there is nothing that suggests that Plaintiff's shoulder injury was a sufficiently serious condition to satisfy the objective prong of the Eighth Amendment analysis. Even if Plaintiff was able to show that his shoulder injury was sufficiently serious, he is also unable to show that Defendants deprived him of adequate care in response to his complaints of shoulder pain.

Despite Plaintiff's complaints of pain, on examination Plaintiff did not have an "obvious deformity" or "muscle wasting", *id.* at p. DEF000394 and was noted to have a good range of motion in his shoulder, *id.* at p. DEF000378. For treatment, Dr. Ramineni prescribed Motrin 600mg three times daily and referred Plaintiff to physical therapy. Pl.'s AHR at p. DEF000397. In his evaluation for physical therapy, Plaintiff's physical therapist assessed him with "residual [rotator cuff] weakness from old injury" and "possible AC [joint] separation." Pl.'s AHR at p. DEF000438. The physical therapist opined that Plaintiff did not have "much potential for significant improvement" due to "heavy muscle build and workout lifestyle." *Id.* at p. DEF000438. Plaintiff attended two sessions of physical therapy, but did not tolerate the exercises and reported increasing pain. *Id.* at pp. DEF000433-434. Although he did not the tolerate physical therapy, *id.* at p. DEF000433, Plaintiff continued to lift weights throughout the relevant time period on a daily basis, *see id.* at pp. DEF000378, DEF000392, & DEF000438. Dr. Ramineni determined that there was no indication to refer Plaintiff to an orthopedic specialist. *See id.* at pp. DEF000390 & DEF000394. Throughout Plaintiff's complaints, Dr. Ramineni "found nothing other than discomfort arising from earlier surgery or resulting from his continued weight lifting." Ramineni Decl. at ¶ 31. Dr. Ramineni attests that shoulder pain is common following acromioplasty surgery. *Id.* at ¶ 23.

Here, even viewed in the light most favorable to Plaintiff, the record does not suggest that Plaintiff's shoulder injury was "a condition of urgency that [could] result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d at 702. The record documents that Plaintiff retained a normal range of motion in his shoulder and was able to lift weights on a daily basis. There is no evidence that Plaintiff suffered "severe pain." Dr. Ramineni determined that Plaintiff was experiencing normal discomfort incident to acromioplasty surgery. Under the objective prong, "an assertion of

pain sensation alone, unaccompanied by any large medical complications, does not amount to a serious medical need." *Evan v. Manos*, 336 F. Supp. 2d 255, 260 (W.D.N.Y. 2004) (citation omitted). Furthermore, even if Plaintiff's shoulder pain was a serious medical need, the record establishes that the treatment Defendants provided him—over-the-counter pain medication and a referral to physical therapy—was adequate. Plaintiff's claim that he should have been referred to an orthopedic specialist, *see* Am. Compl. at ¶ 112, is insufficient to establish that Defendants acted with deliberate indifference. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *See Chance v. Armstrong*, 143 F.3d at 703; *see also Sonds .v St. Barnabas Hosp. Correctional Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.").

The record also contains complaints of an injury Plaintiff sustained to his right shoulder lifting weights. Pl.'s AHR at p. DEF000366. Dr. Ramineni determined that it was a muscle strain and x-rays were taken that showed minor degenerative changes in Plaintiff's acromioclavicular joint. *Id.* at pp. DEF000317 & DEF000365. A month after the injury, Plaintiff was noted to be in no significant discomfort. *Id.* at p. DEF000362. Based on this record, there is nothing that suggests that Plaintiff's injury to his right shoulder was a sufficiently serious injury.

## 2. Sinusitis

Plaintiff repeatedly complained of nasal and sinus congestion, which caused difficulty breathing, pain, and bleeding. *See* Ramineni Decl. at ¶ 45 (citing dates on which Plaintiff complained of sinus problems at Pl.'s AHR at pp. DEF000292, DEF000370, DEF000371, DEF000380, DEF000385, & DEF000394); Mannava Decl. at ¶¶ 16, 22, & 28. Plaintiff had sinus surgery in the past and Dr. Ramineni observed that Plaintiff had thickening of the sinus lining on a past x-ray. Pl.'s AHR at p. DEF000394.

Plaintiff's medical records establish that he cannot show that his sinus problems were a serious medical need or that he was deprived of adequate care. Throughout his incarceration at Mid-State, Plaintiff was provided with over-the-counter NACL nasal spray and prescriptions for Nasacort AQ and Claritin for sinus irritation and allergies. Ramineni Decl. at ¶¶ 13 & 43; Mannava Decl. at ¶ 16. On occasions when he complained of sinus infections, Plaintiff was prescribed Augmentin 875mg twice daily. Pl.'s AHR at pp. DEF000292 and DEF000394. Plaintiff was examined for complaints of difficulty breathing, but his nasal passages were found to be normal and without inflammation. *Id.* at pp. DEF000380 & DEF000385. Plaintiff also once claimed that he was bleeding from his nose, but Dr. Ramineni did not observe any blood or yellow discharge. *Id.* at p. DEF000380. On August 9, 2011, x-rays were taken that showed no evidence of sinusitis; Plaintiff had some post-surgical changes in the mandible, some soft tissue swelling over the nasal region, but no convincing air fluid level indicative of sinusitis. *Id.* at p. DEF000319.

Even viewed in the light most favorable to Plaintiff, Plaintiff's nasal congestion does not amount to a condition that could "result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d at 702. Furthermore, the record demonstrates that Defendants appropriately responded

to Plaintiff's complaints of sinus problems, providing over-the-counter nasal sprays, prescription allergy medication, antibiotics for sinus infections, and referring him for x-rays. Plaintiff's claim that Defendants should have referred him to an Ear, Nose, and Throat specialist, *see* Am. Compl. at ¶ 113, amounts to a mere dispute over the proper course of treatment and is insufficient to establish that Defendants acted with deliberate indifference. *Chance v. Armstrong*, 143 F.3d at 703.

### 3. Headaches

In late 2012, Plaintiff began complaining of headaches and other symptoms that he believed were indicative of a stroke, including numbness, the feeling of "pins and needles" in his left arm, pain in his left biceps extending to his armpit and chest, and slowness of gait and confusion. *See* Pl.'s AHR at p. DEF000282. In his Amended Complaint, Plaintiff alleges that his headaches were "severe," occurred "almost daily," and interfered with his daily activities. Am. Compl. at ¶¶ 77, 90, & 100.

Contrary to Plaintiff's claims that Defendants ignored a possible stroke, the record shows that Defendants evaluated Plaintiff's symptoms and found no symptoms indicative of a stroke. Plaintiff first expressed that he thought he suffered a stroke on September 12, 2012. Pl.'s AHR at p. DEF000285. He stated that he had had a headache for four days and his arm felt "weird and trembly" *Id.* The nurse noted that Plaintiff did not appear to be in acute distress, had a normal gait, spoke clearly, and had actively been going to the law library and gym. *Id.* Plaintiff saw Dr. Ramineni two days later, who noted that Plaintiff had a normal gait and was fully oriented. *Id.* Dr. Ramineni found no evidence that Plaintiff had suffered a stroke or that he was at an elevated risk of suffering one. Ramineni Decl. at ¶ 73. Plaintiff raised similar complaints to Dr. Mannava three months later, who similarly found no symptoms indicative of a stroke. Mannava Decl. at ¶¶ 21 &

24. Specifically, Plaintiff denied nausea, vomiting, burning, tingling, and weakness in his extremities; was alert and fully oriented; had no tenderness or masses on his head; his pupils equally reacted to light; he could move his extremities well with good strength; and had no sensory or motor deficits. *Id.* at ¶ 21. Dr. Mannava ordered blood tests, which came back normal. *Id.* at ¶¶ 21-22. With respect to his numbness in his left arm, an electromyogram was completed on November 28, 2012, which showed mild C7 radiculopathy, chronic C5 radiculopathy, and early, mild neuropathy of the median nerve. *Id.* at ¶ 20. Thus, Plaintiff's concern that he had suffered a stroke was unfounded and provides no basis for an Eighth Amendment claim.

As to Plaintiff's headaches, the record contains numerous complaints of chronic and severe headaches beginning in September 2012. *See generally* Pl.'s AHR at pp. DEF000252-285. Painful and debilitating headaches may constitute an objectively serious medical need. *See Peterson v. Miller*, 2007 WL 2071743, at *7 (N.D.N.Y. July 13, 2007). However, even assuming for the purposes of this Motion that Plaintiff's headaches were a sufficiently serious condition, Plaintiff is unable to show that Defendants denied him adequate treatment. Based on his assessment that Plaintiff's headaches were either tension headaches or psychogenic, Dr. Mannava directed Plaintiff to take ibuprofen for his headaches. Mannava Decl. at ¶¶ 14, 21-22, 25, & 29. Dr. Mannava also referred Plaintiff for an eye exam as a result of which new glasses were ordered. Pl.'s AHR at pp. DEF000257 & DEF000265. The record therefore demonstrates that Defendants reasonably responded to Plaintiff's complaints of headaches. *See Peterson v. Miller*, 2007 WL 2071743, at *10 (finding that migraine headaches were appropriately treated with pain relief medication). To the extent that Plaintiff claims that Defendants should have prescribed a stronger pain medication or ordered a CT scan, "disagreements over medications, diagnostic techniques, forms of treatment, the

need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment." *Wright v. Genovese*, 694 F. Supp. 2d 137, 155 (N.D.N.Y. Mar. 9, 2010).

### 4. Fungus

Plaintiff complains of a fungal infection that spread along his right hand and on his toe nails. Am. Compl. at ¶¶ 94 & 106. Plaintiff claims that the infection "consumed" a fingernail and caused his fingers to bleed. *Id.* Plaintiff claims the fungus caused him severe pain and exposed him to the risk of other infections. *Id.* at ¶ 111. The medical records contradict Plaintiff's claims that his fungal infection was a serious medical condition, and further demonstrate that Defendants provided adequate treatment and were not deliberately indifferent towards the condition.

Plaintiff complained twice to Dr. Ramineni of a fungal infection on his toenail, but on examination, Dr. Ramineni determined that it was a dystrophic nail, and no intervention was necessary. Pl.'s AHR at pp. DEF000306 & DEF000400. Plaintiff also complained of fungus on his fingernails and was given an over-the-counter fungal cream. *Id.* at p. DEF000305. Plaintiff complained to Dr. Mannava of "scaling and pimply" skin on his feet and right hand and deformed toenails and a right finger nail. *Id.* at p. DEF000279. Dr. Mannava assessed Plaintiff with onychomycosis and athlete's foot, but referred him for a dermatology consult before determining a treatment plan. *Id.* The dermatology consult confirmed the diagnoses of dystrophic finger and toenails and onychomycosis. *Id*. at p. DEF000271. Dr. Mannava put in a request for a prescription for Lamisil 250mg daily, but the request was denied because the treatment was considered "cosmetic." *Id.* at pp. DEF000268 & DEF000271. Plaintiff continued to complain that the fungus on his hands was spreading, but no changes were observed. *Id.* at pp. DEF000254 & DEF000264. A nurse noted that Plaintiff was complaining about the "same small areas" that he had previously

complained of, and that the condition was neither "acute" or "consuming." *Id.* at p. DEF000264. Later, a nurse noted peeling skin on Plaintiff's palm, but no fungus. *Id.* at p. DEF000254.

Based on these records, there is nothing that suggests that Plaintiff's fungal infections were an objectively serious medical need. *See Thompson v. Carlsen*, 2010 WL 3584409, at *6 (N.D.N.Y. Aug. 16, 2010) (finding that "dry, cracked, and itchy skin" did not amount to an objectively serious medical condition); *Scott v. Laux*, 2008 WL 4371778, at *5 (N.D.N.Y. Sept. 18, 2008) ("Fungal infections of the feet have not been found to constitute serious medical needs in federal court."). Furthermore, the records evidence that Defendants provided appropriate treatment and were not deliberately indifferent towards Plaintiff's fungal infections.

## 5. Abdominal Pain

Plaintiff made repeated complaints of right abdominal pain. Pl.'s AHR at pp. DEF000380, DEF000389, DEF000390, DEF000395, DEF000400, & DEF000402. On different occasions, Plaintiff expressed concern that the pain indicated problems with his liver, pancreas, and gall bladder. *Id.*

However, the record shows that Plaintiff's concern about his abdominal pain was unfounded. On repeated examinations, Plaintiff's abdomen was soft, non-tender, and without any masses. *Id.* at pp. DEF000380, DEF000390, DEF000400, & DEF000402. Plaintiff had multiple negative liver function tests and a negative Hepatitis C test. *Id.* at pp. DEF000390 & DEF000389. Thus, there was no objective evidence to support Plaintiff's complaints of abdominal pain. *See* Ramineni Decl. at ¶ 42. In January 2011, after Plaintiff made undocumented complaints of vomiting and doubling over in pain, Pl.'s AHR at p. DEF000389, he was admitted to the infirmary for observation for one week, during which time he was not observed to have any episodes of abdominal pain, vomiting, or nausea,

*id.* at p. DEF000346. On this record, there is nothing indicating that Plaintiff's abdominal pain was an objectively serious medical condition. *See Thomas v. Nassau Cty. Correctional Ctr.*, 288 F. Supp. 2d 333, 338 (E.D.N.Y. 2003) ("[S]ubjective complaints of pain are not sufficient to satisfy [the objective prong]."). Furthermore, Plaintiff cannot show that Defendants failed to adequately respond to his complaints, as they conducted physical examinations and ordered Hepatitis C and liver function tests.

### 6. Right Elbow Pain

Throughout the Summer of 2012, Plaintiff complained of pain in his right elbow, which he believed to be bursitis. Pl.'s AHR at pp. DEF000288, DEF000290, DEF000293, DEF000297, DEF000298, & DEF000299. Plaintiff repeatedly requested that his elbow be drained or that he receive a cortisone shot, and, on August 17, 2012, requested surgery. *Id.* at pp. DEF000288 & DEF00297.

The record again does not evidence that Plaintiff's elbow pain was an objectively serious medical condition, or that Defendants failed to adequately respond to his complaints. During his examinations, Dr. Ramineni observed that Plaintiff's elbow moved normally and without discomfort and that there was no bursal swelling. Ramineni Decl. at ¶ 56. His assessment was that Plaintiff had mild musculoskeletal pain. Pl.'s AHR at p. DEF000298. He found no indication for intervention since there was no evidence of bursitis. *Id.* at p. DEF000297. He did, however, note a small bony projection on Plaintiff's elbow and ordered x-rays. *Id.* at pp. DEF000290 & DEF000297. The x-rays showed a small spur on the olecranon that Dr. Ramineni determined was clinically insignificant. *Id.* at p. DEF000298. Dr. Ramineni recommended that Plaintiff use an elbow brace if he continued to experience pain. *Id.* Thus, there is nothing in the record that demonstrates that Plaintiff's elbow

pain was a condition that could result in "degeneration or extreme pain." Nor does the record suggest that Defendants failed to appropriately respond to Plaintiff's complaints.

### 7. Plaintiff's Remaining Medical Conditions

In his Amended Complaint, Plaintiff also complains of back pain, a wart on his finger, and high cholesterol. However, a review of the record shows that none of these conditions amounted to an objectively serious medical condition.

Plaintiff complained to Dr. Ramineni of his back pain on a single occasion; Dr. Ramineni noted that x-rays of Plaintiff's spine showed minimal changes, that Plaintiff's gait was normal, and that there was no tingling in Plaintiff's legs. Pl.'s AHR at p. DEF000402. Dr. Ramineni recommended that Plaintiff take NSAIDs as needed and complete back exercises to strengthen the area. *Id.* While severe back pain can amount to a serious medical need, nothing in the record suggests that Plaintiff's back caused him extreme pain. *See Nelson v. Rodas*, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002).

Plaintiff's complaints of a wart on his finger are similarly insufficient. Plaintiff complained of a wart on his right index finger on several occasions. Pl.'s AHR at pp. DEF000293, DEF000300, DEF000301, DEF000310, DEF000357, & DEF000359. Dr. Ramineni observed a pinhead sized wart, which did not have the characteristics of a true wart. *Id.* at pp. DEF000357 & DEF000359. He prescribed Plaintiff Condylox gel for treatment. *Id.* at pp. DEF000301 & DEF000357. The record does not suggest that Plaintiff's wart was a serious medical condition. *See Whitfeld v. O'Connell*, 2010 WL 1010060, at *8 (S.D.N.Y. Mar. 18, 2010) ("Warts do not constitute a serious medical need under the Eighth Amendment.").

Finally, as to Plaintiff's high cholesterol, it is undisputed that Plaintiff's prescriptions for

Lipitor 60mg and Lopid 600mg twice daily were continued when he arrived at Mid-State. Ramineni Decl. at ¶ 13. Lab work was ordered on July 28, 2010, in order that Plaintiff's medications could be adjusted if he was not within the target cholesterol range. Pl.'s AHR at p. DEF000403. On July 14, 2011, Dr. Ramineni noted that results of Plaintiff's cholesterol lab work and ordered that Plaintiff's Lipitor be increased and that Plaintiff be placed on a low cholesterol diet. *See id.* at pp. DEF000365, DEF000370, & DEF000374. Thus, Plaintiff's high cholesterol is insufficient to give rise to an Eighth Amendment claim.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 190) be **GRANTED** as to Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Dr. Ramineni and Dr. Mannava who should be dismissed as Defendants to this action; and **GRANTED** as to the Doe Defendants who should also be dismissed as Defendants to this action; and **DENIED** in all other respects; and it is further

**RECOMMENDED**, that if the Court's recommendations are accepted, that this matter be deemed trial ready and an exhaustion hearing should be scheduled prior to such trial; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Date:   March 10, 2017
          Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge