**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BARRY BERMAN,

                                        Plaintiff,

                                                            9:13-CV-136
                    v.                                      (LEK/DJS)

CHARLES DURKIN, *et al.*,

                                        Defendants.

**APPEARANCES:**                        **OF COUNSEL:**

BARRY BERMAN
Plaintiff, *Pro Se*
20 Glen Cove Rise
Rochester, NY  14617

MARTIN HARDING & MAZZOTTI, LLP          MICHAEL L. WHITE, ESQ.
Trial Counsel for Plaintiff             PHILIP S. MAZZOTTI, ESQ.
1222 Troy-Schenectady Road
Niskayuna, NY  12309

HON. LETITIA JAMES                      JOSHUA E. MCMAHON, ESQ.
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

**I.  INTRODUCTION**

        Plaintiff commenced this civil rights action *pro se* on February 5, 2013.  Dkt. No.

1, Compl.  Following initial review pursuant to 28 U.S.C. §§ 1915(e) & 1915A, a motion

to dismiss, and a motion for summary judgment, the following claims remain:  (1) an Eighth Amendment excessive force claim against Defendants Devereaux and King relating to events allegedly occurring on May 27, 2010, and (2) an Eighth Amendment excessive force claim and a First Amendment retaliation claim against Defendants Mitchell and Durkin arising from events allegedly occurring on June 13, 2010.  Dkt. No. 127, Am. Compl.; Dkt. Nos. 200 & 201.

Defendants have again moved for summary judgment as to Plaintiff's remaining claims.  Dkt. No. 218.  Plaintiff has opposed the Motion.  Dkt. No. 224.

## A.  Summary of the Relevant Facts

The Court summarized the relevant facts in great detail in its March 10, 2017 Report-Recommendation and Order on Defendants' previous Motion for Summary Judgment.  Dkt. No. 200 at pp. 5-8.  The Court will restate the facts relevant to the present Motion.

On May 27, 2010, Plaintiff was going to the yard when he was stopped by Defendant Devereaux for a pat frisk, during which Defendant Devereaux punctured his finger on a pencil in Plaintiff's pocket.  Dkt. No. 218-27, Defs.' SMF, ¶¶ 28-29; Am. Compl. at ¶¶ 15-16.  Plaintiff alleges that he returned to his cell and that Defendant Devereaux later came and discussed the incident.  Am. Compl. at ¶ 17.  Plaintiff apologized and explained that he was taking medication and Defendant Devereaux stated that he would meet with his supervisor regarding whether to issue a misbehavior report. *Id.*

Approximately ten minutes after his conversation with Defendant Devereaux, Plaintiff claims that Devereaux, Defendant King, and three previously dismissed John Doe Defendants came and ordered him to exit his cell. *Id.* at ¶ 18. Defendants ordered Plaintiff to face and grab the cell bars, which Plaintiff did. *Id.* at ¶ 19. Plaintiff was then punched repeatedly in his head, sides, and back. *Id.* Plaintiff collapsed, but was ordered to get up, and when he did, was again punched repeatedly in his head, sides, and back. *Id.* at ¶¶ 21-23. Defendants warned Plaintiff that if he reported the assault, they would return and "it would be worse." *Id.* at ¶ 24. No use of force report was generated regarding the alleged assault. Defs.' SMF at ¶ 19. Defendants Devereaux and King deny that they assaulted Plaintiff on any occasion. *Id.* at ¶¶ 11.

On May 28, 2010, the following day, Plaintiff went to sick call. Am. Compl. at ¶ 25. Plaintiff claims that he was accompanied by C.O. Bushey who threatened him not to report the assault. *Id.* Plaintiff complained of pain on his right side and stated that he had fallen down some stairs. Dkt. No. 218-3, Decl. of Joshua McMahon, Ex. A, at p. 413.[1] No bruising or marks were noted and Plaintiff was observed getting onto and off of the exam table without signs of pain or discomfort. *Id.*

As a result of the pat frisk conducted by Defendant Devereaux, Plaintiff was issued a misbehavior report, which charged him with making false statements, refusing a direct order, and refusing a search or frisk. Defs.' SMF at ¶¶ 26-30. A Tier II Disciplinary Hearing was held on June 1, 2010. *Id.* at ¶ 33. Plaintiff testified at the hearing, and was

---

[1] Reference is to the bates stamped number preceded by "DEF" on the bottom of the document.

found guilty of the charges and assessed fifteen days loss of recreation, phone, packages, and commissary.  *Id.* at ¶ 35.  Plaintiff appealed the determination and it was affirmed.  *Id.* at ¶ 36.

On June 8, 2010, Plaintiff sent a complaint concerning the alleged assault to the New York Inspector General ("IG").  Dkt. No. 218-6, McMahon Decl., Ex. C-2, at pp. 511-14.[2]  In his Amended Complaint, Plaintiff alleges that Defendant Durkin acquired a copy of the letter to the IG and attempted to instigate other inmates to retaliate against Plaintiff for being a "snitch."  Am. Compl. at ¶ 29.  Plaintiff claims that on June 13, 2010, Defendants Durkin and Mitchell came to his cell and escorted him to a room at the front of the block.  *Id.* at ¶ 30.  Defendant Durkin then told Plaintiff that he was going to ask him questions about his letter to the IG and that whenever he gave a wrong answer, Defendant Mitchell would punch him in the face.  *Id.*  Defendant Durkin proceeded to ask Plaintiff questions and Defendant Mitchell punched Plaintiff at least ten times in the face.  *Id.*

Defendants then escorted Plaintiff to Defendant Durkin's office.  *Id.* at ¶ 31.  Prior to entering the office, Defendant Durkin ordered Plaintiff to face and grab the bars in order to be searched.  *Id.*  While Plaintiff was holding the bars, Defendant Mitchell repeatedly punched Plaintiff in his head, back, and sides.  *Id.*  Plaintiff was then taken into the office and further questioned.  *Id.* at ¶ 32.  Defendants accused Plaintiff of having contraband tattoo guns and threatened him not to report the incident.  *Id.* at ¶¶ 33 & 35.

---

[2] Reference is to the bates stamped number preceded by "DEF" on the bottom of the document.

Again, no use of force report was generated regarding this alleged assault. Defs.' SMF at ¶ 19. Plaintiff was not taken to medical following the incident and next went to sick call on June 24, 2010, where he again did not report any assault by staff. *Id.* at ¶¶ 40-41. Plaintiff alleges that, on June 17, 2010, photographs were taken of the "visible injuries" to his face. Am. Compl. at ¶ 38.

Following the alleged incidents on May 27 and June 13, Plaintiff alleges that Defendant Durkin continued to harass and threaten him. Plaintiff alleges that Defendant Durkin moved Plaintiff's cell twice and confiscated some of his legal papers, envelopes, and toilet paper. *Id.* at ¶¶ 46, 48, & 52. Defendant Durkin allegedly threatened Plaintiff to not talk about the incidents. *Id.* at ¶ 47. Plaintiff also claims that Defendant Durkin stated that he planned to "set [P]laintiff up" by submitting a memo identifying Plaintiff as a drug dealer. *Id.* at ¶ 49. Plaintiff alleges that he suffered lasting pain following the alleged assaults. *Id.* at ¶ 101.

## II. DISCUSSION

### A. Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.

1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. The Second Summary Judgment Motion

As an initial matter, Plaintiff "asserts the doctrine of res judicata," noting that "[t]his is the Defendant's second motion for summary judgment on the same specific two issues that were argued and denied by this Court." Dkt. No. 224, Pl.'s Opp.

Defendants' Second Motion for Summary Judgment is, in large part, identical to their First Motion for Summary Judgment. Initially, "[d]istrict courts enjoy considerable discretion in entertaining successive dispositive motions." *Grabin v. Marymount Manhattan Coll.*, 659 Fed. Appx. 7, 8-9 (2d Cir. 2016) (citation omitted). However, "successive motions for summary judgment may be procedurally improper if the arguments in the second motion could have been raised in the first motion." *Brown v. City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012); *see also Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004) ("The Court does not approve in general the piecemeal consideration of successive motions for summary judgment because parties ought to be held to the requirement that they present their strongest case for summary judgment when the matter is first raised.") (internal quotation marks omitted) (citation omitted); *Johnson v. Gagnon*, 2016 WL 5408161, at *2-3 (N.D.N.Y. Sept. 28, 2016) ("parties should not be allowed to bring a second or successive

dispositive motion to correct deficiencies in the original motion.") (internal quotation marks omitted) (citation omitted).

However, "[t]he doctrine of the law of the case, rather than res judicata . . . applies in a case, such as this one, where there has been no final judgment." *State Farm Mut. Auto. Ins. Co. v. Mallela*, 2002 WL 31946762, at *8 (E.D.N.Y. Nov. 21, 2002); *see also Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990). "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, at *7-8 (2d Cir. 1996) (internal quotation marks omitted) (citation omitted). "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication. The doctrine is discretionary, and expresses, in shorthand fashion, a practice of courts not to reconsider that which has already been decided." *Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc.*, 2013 WL 342693, at *3 (S.D.N.Y. Jan. 29, 2013). "[C]ourts normally decline to re-examine issues previously decided in the case absent compelling circumstances, such as an intervening change in controlling law, the introduction of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 334 F. Supp.2d 197, 243 (N.D.N.Y. 2004).

The only evidence Defendants submit that they did not include in their First Motion, is from Plaintiff's deposition, and declarations of Defendants. Defendants provide no explanation for why when they made their First Motion for Summary

Judgment, in August of 2016, they could not have included evidence from Plaintiff's 2014 deposition, or submitted declarations from Defendants. *See* Dkt. No. 218-1, Defs.' Mem. of Law. Thus, this is not a scenario where significant discovery of Plaintiff occurred following the submission of the First Motion; indeed, the only discovery that occurred was depositions of Defendants. *Cf. Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 334 F. Supp.2d at 243-44 ("The earlier ruling . . . was in response to a motion filed at an early procedural juncture, prior to the completion of discovery, and upon a scant record, particularly in contrast to the exhaustive materials now before the court."). The Court will nonetheless consider the effect of the newly submitted evidence, although given the nearly identical state of the record the Court is guided by its prior ruling.

### C. Excessive Force Claims

As in their previous Motion for Summary Judgment, Defendants contend that the four remaining Defendants are entitled to summary judgment on Plaintiff's excessive force claims. Defs.' Mem. of Law at pp. 3-9. The Court described in detail the required components of an Eighth Amendment excessive force claim in its decision on the First Motion and will not repeat it all here. Dkt. No. 200 at pp. 16-18. In short, to succeed on such a claim, an inmate must prove: (1) an objective component focusing "on the harm done, in light of contemporary standards of decency," and (2) a subjective component showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson*

*v. McMillian*, 503 U.S. 1, 8 (1992) and *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)).

In their Motion, Defendants submit declarations asserting that no force was used on Plaintiff on the dates alleged. Defs.' Mem. of Law at p. 4; *see* Dkt. No. 218-16, Durkin Decl., ¶ 15; Dkt. No. 218-23, Devereaux Decl., ¶ 12; Dkt. No. 218-19, Mitchell Decl., ¶ 8; & Dkt. No. 218-22, King Decl., ¶ 11. Defendants assert that the denials contained in Defendants' depositions are consistent with Defendants' written accounts provided in conjunction with a facility investigation, as well as with Defendants' statements in connection with the IG's investigation. Defs.' Mem. of Law at p. 4.

Defendants describe that Plaintiff was not seen by medical until he requested sick call on May 28, 2010. *Id.* at p. 5.[3] In addition, they describe that no discernible marks or bruising were noted during his examination, and that Plaintiff was observed climbing onto and off of the exam table without signs of pain or discomfort. *Id.* In addition, they describe that Plaintiff reported that he had fallen down some stairs and made no mention of an assault, and that although he alleges that he withheld the cause of his injuries because he felt threatened, when he was interviewed by an IG investigator, he admitted to making the story up, and that he had not been coerced by anyone. *Id.* Plaintiff was seen by medical on June 1, 7, and 24, 2010, and never complained of assault, or of any pain. *Id.* at p. 6. When Plaintiff testified at a disciplinary hearing in connection with the search and the pencil, he did not mention anything about an assault, nor did he mention

---

[3] Plaintiff controverts this point, stating that he submitted a sick call slip on May 27th. Pl.'s Opp. at p. 4.

any assault in his appeal of the resulting guilty finding. *Id.* at pp. 5-6. The IG performed an investigation regarding Plaintiff's claims, and concluded that they were unsubstantiated and without merit. *Id.* at pp. 6-7.

Given this, Defendants contend that the only evidence supporting Plaintiff's contentions are his own self-serving statements, and that no reasonable jury would credit his version of events because his account is contradictory and incomplete. *Id.* at p. 7 (citing *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005)). In addition, Defendants appear to contend that Plaintiff's injuries existed prior to the alleged assault, pointing to his previous complaints regarding his various pain issues. *Id.* at pp. 7-8.

Defendants asserted these arguments in their First Motion. There, the Court found that the "rare circumstance" described in *Jeffreys* did not apply to this case. Dkt. No. 200 at p. 19. The Court found that Plaintiff's accounts of the incidents were not contradictory and incomplete; indeed, the Court found that there had been no significant discrepancies in Plaintiff's accounts. *Id.* In this Motion, Defendants argue for the first time that Plaintiff "admitted [to] making that story up himself and [that he had not been] coerced by' anyone." Defs.' Mem. of Law at p. 5. This is reflected in the IG report; however, it is not clear to the Court that Plaintiff's statement that he made up the story that he had fallen down the stairs and had not been coerced by anyone is necessarily inconsistent with the allegation that he felt threatened by an officer. Dkt. No. 218-9, McMahon Decl., Ex. D, IG Report, at p. 2. As such, the evidence submitted by Defendants is not substantially different from that which was presented on the First Motion; there has still been no demonstration of significant discrepancies between Plaintiff's accounts of the

- 11 -

occurrences.   The examples of discrepancies that Defendants point to are much less extreme than those in *Jeffreys*.  *See Galberth v. Durkin*, 2017 WL 4325774 (N.D.N.Y. Aug. 31, 2017) ("In *Jeffreys*, the plaintiff could not identify any of the individuals who allegedly attacked him, and could not describe their ethnicities, physical features, facial hair, weight or clothing . . . . Moreover, in *Jeffreys*, the plaintiff's claim that he was thrown out a third-story window by police officers was vitiated by his three prior statements that he jumped.").  These lesser inconsistencies that Defendants point to thus go to the weight accorded to Plaintiff's testimony.  *See Gilmore v. Fitzmaurice*, 2018 WL 4178227, at *10 (N.D.N.Y. May 18, 2018), *report and recommendation adopted*, 2018 WL 4153927 (N.D.N.Y. Aug. 30, 2018).   The Court therefore finds that Defendants have still not demonstrated that Plaintiff's accounts are contradictory and incomplete.   In addition, Defendants' statements that no force was used on Plaintiff demonstrates that there is an issue of fact for trial.   Defendants fail to describe the significance of Plaintiff's longstanding complaints about various medical concerns.  Defs.' Mem. of Law at p. 8. To the extent they intend to contend that Plaintiff's allegation that he sustained injuries is inconsistent with him having preexisting health concerns, that inconsistency is not apparent to the Court.

Defendants also contend that even if Plaintiff's allegations were accepted as true, his injuries are *de minimis* and would not rise to the level of an Eighth Amendment violation.  Defs.' Mem. of Law at pp. 8-9.  They point to Plaintiff's testimony that he experienced pain in his back, sides, and lower right sides particularly, and suffered no bruising, but only red marks as a result of the May 27, 2010 incident; and that he claimed

swelling to his face, a black eye, and feeling pretty shook up as a result of the June 13, 2010 incident. *Id.* at p. 9.

On the Court's first consideration of this issue, it determined that "while '[t]he extent of injury may . . . provide some indication of the amount of force applied . . . it is the latter that ultimately counts.'" Dkt. No. 200 at p. 21 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010)).  The Court determined that Plaintiff alleges more than a *de minimis* application of force by alleging that Defendants repeatedly punched him in the head, ribs, and back on two occasions.  Moreover, the Court reviewed Plaintiff's medical records and determined they "do not disclose injuries that are so minor that the Court can conclude that Defendants applied *de minimis* force." *Id.*

Here, Defendants make the same arguments, and provide additional details from his medical records and deposition.  However, the Court reviewed the medical records disclosing Plaintiff's treatments in deciding Defendants' First Motion, as they were included in Defendants' First Motion. *See id.*; Dkt. No. 190-2 at pp. 412-13; Dkt. No. 218-3, McMahon Decl., Ex. A at pp. 412-13.[4]  This information was thus already considered by the Court in making its previous determination.  Defendants also point to Plaintiff's deposition testimony that when he reported to medical, he told the nurse his back, sides, and lower right side hurt, and that he only noticed red marks on his body.  Dkt. No. 218-10, McMahon Decl., Ex. E at pp. 36-37.  They also point to Plaintiff's testimony that he had a black eye and swelling on his face after the June 13 incident, and

---

[4] Reference is to the bates stamped number preceded by "DEF" on the bottom of the document.

that he did not notice any other bruises or red marks, but that he "just felt pain and [ ] was pretty shook up . . . . I took a lot of very serious blows to my head and I kind of felt like I was punch-drunk.  I mean, my brain was rattled pretty hard." *Id.* at pp. 58-59.  This evidence is all either the same or similar to that which the Court considered on the First Motion and does not demonstrate that a departure from the prior determination is warranted.  The Court will therefore not reconsider its conclusion that the evidence does not demonstrate as a matter of law that Defendants only applied *de minimis* force.  As such, the Court recommends denying Defendants' Motion as to Plaintiff's excessive force claims.

### D.  Retaliation Claims

To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected speech or conduct, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity.  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

Defendants contend that no reasonable jury could conclude that Plaintiff was subjected to the adverse action because Plaintiff alleges in his Second Amended Complaint that Defendants Durkin and Mitchell assaulted him on June 13 for writing a letter to the IG's office complaining about assaults occurring at Clinton, but also alleges that when he was being assaulted, Defendant Durkin asked Plaintiff whether or not he

had written to the IG's Office.  Defs.' Mem. of Law at p. 10.  Defendants contend that this constitutes a discrepancy in Plaintiff's allegations, and that the IG report further demonstrates the discrepancy because it states that Plaintiff's complaint was not received until nearly a week after the June 13 incident.  *Id.*  Defendants made this argument in their First Motion, except this time they point specifically to the IG report as adding support for a finding that there is a discrepancy in Plaintiff's allegations.

The IG report provides that the IG's Office received a complaint letter from Plaintiff on June 23, 2010 containing allegations regarding the June 10 assault; however, it does not state when the complaint was dated or sent to the IG and thus does not appear to demonstrate that it was written or sent after the June 13 incident.  *See* IG Report at p. 1.  In addition, Defendants also attach to their Motion Plaintiff's letter to the IG, which is dated June 8, 2010.  Dkt. No. 218-6, McMahon Decl., Ex. C-2 at pp. 511-14.[5]  Thus, it appears that Plaintiff wrote the letter on June 8, and that he alleges that Defendant Durkin may have asked Plaintiff if he had written to the IG after he had done so.  The Court fails to see any discrepancy in Plaintiff's allegations.  *See* Pl.'s Opp. at pp. 7-8.

Defendants contend that, for the reasons asserted regarding the excessive force claim, no reasonable jury could conclude that Plaintiff was subjected to the adverse action.  Defs.' Mem. of Law at p. 10. Because the Court has found there is an issue of material fact regarding excessive force, this contention fails.  The Court recommends that Defendants' Motion be denied as to Plaintiff's retaliation claim.

---

[5] Reference is to the bates stamped number preceded by "DEF" on the bottom of the document.

### III. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 218) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[6] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).


Dated:   April 26, 2019
         Albany, NY

Daniel J. Stewart
U.S. Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).